Filed 11/24/20  P. v. Underwood CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B304411 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. A371643) |
| v. | |
| ANDRE UNDERWOOD, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Douglas Sortino, Judge.  Reversed and remanded.

Alex Coolman, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Senior

Assistant Attorney General, Eric A. Swenson, Supervising Deputy Attorney General, Felicity Senoski, Deputy Attorney General, for Plaintiff and Respondent.

_____

Defendant and appellant Andre Underwood appeals from the trial court's postjudgment order denying his petition for resentencing pursuant to Penal Code section 1170.95[1] and Senate Bill No. 1437 (Senate Bill 1437). Section 1170.95 provides for vacatur of a murder conviction obtained under either the natural and probable consequences doctrine or the felony murder theory of liability, if the defendant was not the actual killer, did not intend to kill, and was not a major participant in an underlying felony who acted with reckless disregard for human life.  (*People v. Martinez* (2019) 31 Cal.App.5th 719, 723.)

Underwood contends the trial court erred by summarily denying his petition on the basis that he was the actual killer and therefore ineligible for relief as a matter of law.

We reverse and remand to the trial court for further proceedings.

_____

[1] All further statutory references are to the Penal Code unless otherwise indicated.

# FACTS AND PROCEDURAL HISTORY[2]

## *Murder Conviction*

In 1981, Underwood was involved in the robbery and killing of Joe Miyoshi, who died of a gunshot wound to the chest.

Underwood was tried by jury. The prosecution presented evidence of the following: Four young men decided to commit a robbery and took a 12-gauge shotgun with them to accomplish the crime. They happened upon Miyoshi in a van in an alleyway. One of the young men pointed the gun at Miyoshi and he threw money out of the window. Miyoshi then tried to back up the van and escape, but hit a telephone pole. He opened the van door and threw out more money. He begged the young man holding the shotgun not to shoot him. One of the young men saw

---

[2] The People's request for judicial notice, filed September 3, 2020, is denied, as the appellate court record in case No. 44269 was destroyed in 2013 in the normal course of business. The People are reminded that, pursuant to California Rules of Court, rule 8.252(a)(3), "[i]f the matter to be noticed is not in the record, the party must attach to the motion a copy of the matter to be noticed or an explanation of why it is not practicable to do so." However, we take judicial notice of the Los Angeles Superior Court record in *People v. Underwood*, case No. A371643, and the appellate court's prior opinion in *People v. Underwood* (1986) 181 Cal.App.3d 1223 (*Underwood*), from which the facts are drawn.

Underwood, who was walking through the alley, and called him over to them. Underwood joined them and took the shotgun. He held Miyoshi at bay as the others ran. One of the young men looked back and saw Underwood shoot Miyoshi in the chest. Underwood then fled with the others to a friend's house, where they divided Miyoshi's money between them. (*Underwood, supra*, 181 Cal.App.3d at p. 1228.) Under questioning on two occasions by officers investigating the robbery and murder, Underwood gave varying accounts, but consistently admitted happening upon the robbery in progress, arriving only after Miyoshi had surrendered most, if not all, of the money. Underwood consistently denied participation in carrying out the robbery and murder, but he admitted taking a share of the money. (*Id.* at p. 1229.)

Underwood was tried with one co-defendant. At trial, the prosecutor proceeded on the alternative theories that Underwood was either (1) guilty through a felony-murder theory of liability (which could only result in a verdict of first degree murder), or (2) the direct perpetrator (in which case he could be found guilty of either first or second degree murder). She argued: "[T]he underlying theory of the People's case is the felony murder rule. [¶] Felony murder rule says that the unlawful killing of a human being, whether intentional or unintentional and accidental, which occurs as a result of the commission of a crime such as robbery, . . . that's murder. The killing is murder." "But as regards defendant Underwood, it is the position of the People

4

that the murder of [the victim] was a murder in the first degree, whether you get there by way of the felony murder rule -- in other words that it was done during a robbery -- or you get there because not only is it an unlawful killing of a human being with malice aforethought, but it has the additional two elements: Deliberation and premeditation, which the law says makes the crime first degree." "[T]he evidence is very clear that it was defendant Underwood . . . whose finger was on that trigger . . . ."

Defense counsel argued that Underwood was either guilty of receiving stolen property, or an accessory after the fact to the robbery.

As relevant here, the jury was instructed regarding principals to a crime (CALJIC No. 3.00), aiding and abetting (CALJIC No. 3.01), murder (CALJIC No. 8.10), malice aforethought (CALJIC No. 8.11), deliberate and premeditated murder (CALJIC No. 8.20), first degree felony murder (CALJIC No. 8.21), first degree felony murder in pursuance of a conspiracy (CALJIC No. 8.26), first degree felony murder aider and abettor (CALJIC No. 8.27), unpremeditated murder of the second degree (CALJIC No. 8.30), the duty of the jury as to the degree of murder (CALJIC No. 8.70), doubt whether the offense was first or second degree murder (CALJIC No. 8.71), and unanimous agreement as to the offense—first or second degree murder (CALJIC No. 8.74).

The jury found Underwood guilty of second degree murder (§ 187, subd. (a)) and robbery (§ 211). It found true

the allegation that a principal used a firearm in the commission of both crimes (§ 12022, subd. (a)), but was unable to reach a verdict as to the allegations that Underwood personally used a firearm in the offenses. (§§ 12022.5, 1203.06, subd. (a)(1).)

Underwood was sentenced to 15 years to life in prison for murder, plus one year for the firearm allegation in that count. The court imposed and stayed a sentence of one-third of the mid term of one year on the robbery count, plus one year for the firearm allegation.

### *Proceedings in The Court of Appeal and the Supreme Court*

The Court of Appeal affirmed the judgment, but remanded the matter to the trial court for preparation of a new abstract of judgment that would correctly reflect Underwood's custody credits. Subsequently, the Supreme Court granted Underwood's request for a hearing and transferred the matter back to the appellate court for reconsideration in light of *People v. Croy* (1985) 41 Cal.3d 1 (*Croy*).

In *Croy*, the Supreme Court held that the trial court erred by giving an aiding and abetting instruction that did not require the jury to find that the defendant shared the perpetrator's intent to commit or facilitate the commission of the robbery at issue in that case. (*Croy*, *supra*, 41 Cal.3d at pp. 11–12.) The Supreme Court further held that the error

6

was prejudicial, and reversed a murder and an attempted murder conviction in addition to the robbery conviction, because the jury could have found the defendant guilty of the murder charges on the basis of a felony-murder theory of liability for which the robbery charge was the predicate crime.  (*Id*. at pp. 11–21.)

Following transfer back in Underwood's case (in which the trial court utilized the same faulty aiding and abetting instruction that the trial court had given in *Croy*), the Court of Appeal found *Croy* distinguishable with respect to the robbery conviction:  "In the case at bench, defendant does not deny making the statements attributed to him which placed him at the scene of the offenses and which carried the admission that he had taken a share of the victim's money. Unlike the defendant in *Croy*, defendant here was not a passive bystander to the robbery which led directly to the victim's death.  As noted above, his participation in the crimes went well beyond 'aiding' their completion.  In the language of *Croy*, we find that there was 'no plausible basis on which the jury could find that the defendant acted for another purpose' (*Croy*, *supra*, 41 Cal.3d at p. 16.), or that he was 'incapable of recognizing his obligation to adhere to society's laws,' due to prior intoxication.  (*Id*., at p. 20.)" (*Underwood*, *supra*, 181 Cal.App.3d at pp. 1235–1236.)  The court held that Underwood's culpability as a perpetrator of the robbery had been established as a matter of law and the jury instructions on aiding and abetting were therefore

inapplicable and unnecessary as to that charge. (*Id.* at p. 1235.)

Moving to the murder conviction, the appellate court held that, having found Underwood to be an intentional perpetrator of the robbery as a matter of law, it necessarily followed that he was guilty of first degree felony murder. (*Underwood, supra,* 181 Cal.App.3d at p. 1237.) Although the court's determination was inconsistent with the jury's verdict of second degree murder, it concluded that the inconsistency was likely an act of leniency on the part of the jury. (*Ibid.*) The verdict would stand, because "[w]here a defendant is guilty of first degree felony murder as a matter of law, there is no reason to reverse a second degree verdict which is more favorable to defendant than warranted by the evidence." (*Ibid.*)

The Court of Appeal again affirmed the judgment, but remanded the matter to the trial court for preparation of a new abstract of judgment that would correctly reflect Underwood's custody credits.

### *Petition for Resentencing*

On July 1, 2019, Underwood filed a petition for vacatur of the murder conviction and resentencing under section 1170.95. He utilized a standardized form, and attached the verdicts and the abstract of judgment in his case. Underwood did not indicate whether he was convicted under a natural and probable consequences or felony murder

8

theory of liability, and did not indicate that he was not the killer, did not act with intent to kill, and was not a major participant in the underlying robbery who acted with reckless indifference to human life. He requested that counsel be appointed to him.

The People filed a response on August 30, 2019, contending that Underwood was ineligible for relief because he was the actual killer, as evidenced by the record of conviction, and that Senate Bill 1437 was unconstitutional. Attached to the response were the Court of Appeal's opinion in *Underwood*, and several documents relating to the constitutionality of Senate Bill 1437, which are not pertinent to the present appeal.

The trial court appointed counsel to Underwood on August 30, 2019.

At a hearing on November 18, 2019, the trial court provisionally denied Underwood's petition, based on its view that the Court of Appeal's prior opinion indicated Underwood was the actual killer. The trial court stated: "I want to make the record clear; I do not, at this point, find a prima facie case. I've appointed counsel prior to having the People's response and prior to having a copy of the appellate court opinion in this case, and frankly, had I had the appellate court opinion prior to receiving the petition or shortly after receiving the petition, I probably would have denied it summarily, without appointing counsel or asking for a reply from the defense, because it appears to me, based on the appellate court opinion, Mr. Underwood was the

9

actual killer in this case." "[Y]ou have an eye witness, who apparently testified that [Underwood] was the one that actually pulled the trigger that killed the victim in this case; and therefore, whether the shooting happened during the course of, or subsequent to the robbery, to me, is incidental. He's the actual killer. This takes him outside the scope of 1170.95." "That's a preliminary record, obviously. If there's something you wanted to add, I'll consider it, but that's where I'm at, at the moment." The court continued the hearing to January 14, 2020, to allow defense counsel to reply to the People's response.

On January 6, 2020, defense counsel filed a reply to the People's response, arguing that Underwood had made a prima facie case for relief. The reply argued that Underwood had presented sufficient evidence of a prima facie case of eligibility under section 1170.95, because the jury's verdict indicated that it was highly likely that it convicted Underwood under a felony murder theory of liability, and conflicting evidence had been presented at trial regarding which of the men was the shooter.

At the hearing on the section 1170.95 petition, Underwood's counsel stated that it was his understanding that Underwood had been convicted under the felony murder doctrine. The trial court responded, "Well, I don't know that that's the case, because they came back with a second [degree murder verdict], and if it was felony murder, it would have been a first [degree murder verdict]. The court of appeal expressly acknowledges in its opinion, the only

10

explanation is an attempt for the jury to show leniency in contravention of the law. So I don't know if that's really a sound position to take, in light of the record of conviction." Defense counsel replied that the jury was also hung as to whether Underwood personally used a gun, and if Underwood were the killer, he had to have used a gun. He argued that, to make a prima facie case, a defendant need only raise an issue of fact that must be resolved, which was exactly what Underwood had done. The court ruled: "I'll deny the 1170.95. I don't believe a prima facie case has been established, based upon the record of conviction. [¶] The court of appeal opinion establishes that he was the shooter. As the shooter, he is ineligible for relief. The court finds no prima facie case."

Underwood timely appealed.

## DISCUSSION

On appeal, Underwood contends that the trial court erred when it found that he was the actual killer based on the recitation of evidence presented in the Court of Appeal's opinion, and therefore ineligible for relief as a matter of law.[3]

_____

[3] In the People's response, the Attorney General asserted that Underwood was required to successfully petition for habeas corpus before he could petition for resentencing under section 1170.95, but that, even if a section 1170.95 petition were the proper vehicle to challenge

11

*Senate Bill 1437 and Section 1170.95*

Through section 1170.95, Senate Bill 1437 created a process by which a defendant convicted of murder under the natural and probable consequences or felony murder doctrine can petition to have his or her conviction vacated and be resentenced. Section 1170.95 initially requires a court to determine whether a petitioner has made a prima facie showing that he or she falls within the provisions of the statute as set forth in subdivision (a), including that "(1) [a] complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[,] [¶] (2) [t]he petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder[, and] [¶] (3) [t]he petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (See § 1170.95, subd. (c).)

If it is clear from the record of conviction that the petitioner cannot establish eligibility as a matter of law, the

---

his murder conviction, Underwood was ineligible as a matter of law because he was the actual killer. However, at oral argument, the People conceded that Underwood has made a prima facie showing, based on the fact that the jury was instructed regarding second degree murder.

trial court may deny the petition.  (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 323, 329–330, review granted Mar. 18, 2020, S260493.)  A petitioner is ineligible for relief under section 1170.95 as a matter of law if the record shows he or she was not convicted of murder.  (*People v. Turner* (2020) 45 Cal.App.5th 428, 438 [manslaughter]; *People v. Flores* (2020) 44 Cal.App.5th 985, 993 [same]; *People v. Larios* (2019) 42 Cal.App.5th 956, 970, review granted Feb. 26, 2020, S259983 [attempted murder].)  A petitioner is also ineligible if his murder conviction was solely predicated on the theory that he was the perpetrator or a direct aider and abettor.  (*People v. Cornelius* (2020) 44 Cal.App.5th 54, 58, review granted Mar. 18, 2020, S260410 [actual killer]; *People v. Lewis* (2020) 43 Cal.App.5th 1128, 1138–1139, review granted Mar. 18, 2020, S260598 [direct aider and abettor, jury not instructed on natural and probable consequences or felony murder theory of liability].)

If, on the other hand, a determination of eligibility requires an assessment of the evidence concerning the commission of the petitioner's offense, "the petitioner is permitted to proceed to the next stage of review under section 1170.95, subdivision (c).  In that next stage, the trial court must evaluate . . . whether the facts and circumstances of the offense(s) prevent the petitioner from making 'a prima facie showing that he or she is entitled to relief.'  (§ 1170.95, subd. (c).)"  (*People v. York* (2020) 54 Cal.App.5th 250, 262–263.)

*Analysis*

Here, the trial court denied Underwood's petition based on a misreading of the analysis of the facts and law underlying his conviction as set forth in a prior appeal. The Court of Appeal's prior opinion stated only that a witness *testified* that Underwood shot the victim, not that Underwood *actually* shot the victim. In fact, the question of whether Underwood personally used a firearm was before the jury, and the jury was unable to reach a decision as to the truth of that allegation. Given that a gunshot wound undisputedly caused the victim's death, the jury's inability to find Underwood personally used the gun necessarily means there was no jury finding that he was the actual killer. Thus, the appellate court's prior opinion provides no basis for the conclusion that Underwood was the actual killer of Miyoshi as a matter of law.

Rather, in *Underwood*, the Court of Appeal held, based on a review of the undisputed evidence and the jury's verdicts, that Underwood was guilty of felony murder *as a matter of law*. This conclusion was based on the undisputed evidence that Underwood was present and shared in the stolen money—meaning he was "an intentional perpetrator of the robbery"—and the undisputed evidence that the murder was committed in perpetration of that robbery. (*Underwood, supra*, 181 Cal.App.3d at pp. 1236–1237.) The court concluded that the jury's faulty second degree murder conviction "had to be . . . an attempt by the jury to show

14

unwarranted leniency," reducing a first degree felony murder conviction to second degree murder. (*Id.* at p. 1237.) The appellate court's prior holding leaves no room for speculation that Underwood was convicted as the actual killer, rather than under a felony murder theory of liability. The court held that it was Underwood's second degree murder conviction that was problematic, and not the jury's inability to reach consensus regarding whether he personally used a firearm in the offenses. (*Ibid*.) The trial court's reliance on the jury's second degree murder conviction to conclude Underwood was the actual killer, and therefore not eligible for relief under section 1170.95 as a matter of law, was error.

To the extent the trial court's ruling was based upon its own evaluation of the evidence in determining whether Underwood made a prima facie case that he comes within the statute, that too was error. We have previously held that a trial court errs if it finds that a petitioner does not fall within the provisions of section 1170.95 based on its own evaluation of the facts set forth in an appellate opinion. (*People v. Smith* (2020) 49 Cal.App.5th 85, 95–96, review granted Jul. 22, 2020, S262835.)

Because the record of conviction does not establish that Underwood was the actual killer as a matter of law, and it does not appear that he is otherwise ineligible for relief as a matter of law, we reverse and remand the matter to the trial court to conduct further proceedings in accordance with the terms of section 1170.95.

## DISPOSITION

The trial court's order denying Underwood's resentencing petition is reversed.  We remand for the trial court to conduct further proceedings in accordance with the terms of section 1170.95.


       MOOR, J.

We concur:


       RUBIN, P. J.


       KIM, J.