Filed 4/29/21  P. v. Salamanca CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B300962 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA082067) |
| v. | |
| GUMARO SALAMANCA, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Allen J. Webster, Jr., Judge.  Affirmed in part, reversed in part, and remanded for further proceedings.

Tanya Dellaca, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Charles S. Lee and David W. Williams, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury convicted Gumaro Salamanca of first degree murder, attempted willful, deliberate and premeditated murder, and shooting at an inhabited dwelling, and found true several firearm and gang allegations. The trial court sentenced him to 50 years to life in prison. We conditionally reversed the conviction. (*People v. Salamanca* (Jan. 13, 2016, B254814) [nonpub. opn.].)

In our opinion on Salamanca's prior appeal we recited the facts as follows:

"Defendant is a member of the Compton Varrio 70 (CV70) street gang. On October 5, 2005, CV70 gang leader David Guerrero ordered several gang members driving in two cars to commit three shootings as part of a longstanding conflict between CV70 and 'Piru,' a rival gang. Following Guerrero's instructions, defendant drove several fellow CV70 members to a gas station, where two individuals exited his car and shot Charles Smith and Jazmine McKinney with two handguns and an AK-47 assault rifle. Both victims survived. Defendant then drove to Gibson Street, where someone in the car leaned out the front passenger window and shot at a house with the AK-47. Finally, he drove to a parked car containing Dewan Ferguson and Melvin Walker, members of the Leuders Park Piru street gang, a CV70 rival. Someone from his vehicle shot the Piru members with the AK-47. Ferguson survived but Walker was killed. [¶] . . . [¶]

"On March 1, 2007, detectives interrogated defendant . . . [¶] . . . [D]efendant stated . . . [h]e knew Danny Guerrero, as they played Xbox together, including on October 5, 2005, the day of the shooting. On that day, other people arrived at the house after he did, but he could not remember their names. He did not associate with those people, but merely played Xbox with Danny Guerrero. He was nevertheless ordered by a CV70 member whose name he

2

did not know but whom he identified from a photograph as Jose Encisco, to 'go for a ride,' with defendant driving his own car.

"Defendant left the house in his Honda with two passengers whose names he did not know, one in the front seat beside him and one in back. He later identified the one in back as CV70 member David Covarrubias. He could not describe the front passenger, even as to his ethnicity or age, and never spoke to him. During the drive, defendant was directed by someone on the phone. He at first denied knowing who directed him by phone, saying 'it could have been anybody,' but eventually admitted it was David Guerrero. David Guerrero informed defendant he (David) was following in a car with other CV70 members, and instructed him to pull over to a gas station.

"When defendant stopped at the gas station, his passengers got out and he shortly thereafter 'heard some gun shots.' He did not see where the passengers were shooting because, he stated, he 'was actually focused on, you know, on what was going on. I just, you know, kind of like turned back and when I turned back they were already getting inside the car. So at that point I was, I was thinking, you know, I should drive away or whatever. I don't know, like, it was just too much stuff that was coming through my mind.'

"Guerrero then told defendant to drive to a specific house and stop. When he did so, his passengers half-exited the car and shot at the house, after which defendant drove them back to the Guerrero house. Once there, he transferred to an SUV, accompanied by Alejandro Perez, who now had the AK-rifle, and was directed by David Guerrero to drive to a specified location. When he arrived, Perez shot Ferguson and Walker from defendant's car.

3

"Throughout the interrogation defendant minimized his role in the shootings. He claimed he had gone to the Guerrero house only to play Xbox with Danny Guerrero (it was later revealed that Danny Guerrero was incarcerated in San Bernardino at the time of the shootings) and repeatedly stated he had not wanted to drive with CV70 members but was forced to at gunpoint. Defendant claimed not to have seen any gun until he was already on the road and not to have seen any of the shootings, even those committed by his passengers from his vehicle, but merely heard shots. He was unable to identify either the passenger who sat in the front seat during the first drive or any type of gun used in the shootings, claiming he could not distinguish between a revolver or semiautomatic handgun because he said he did not 'know about those revolvers,' and could not tell if the passenger's gun was a pistol or rifle because the passenger 'had it under his, his sweater or something.' (Defendant later admitted the front seat passengers on both drives used an AK-rifle.)" (*People v. Salamanca, supra*, B254814, at pp. 2-5.)

We concluded that Salamanca's "conviction for . . . murder may have been based on the . . . theory of natural and probable consequences."

In 2019, Salamanca filed a petition for resentencing under Penal Code section 1170.95.[1] Relief under section 1170.95 is available to an inmate who was convicted of murder under the natural and probable consequences, aiding and abetting doctrine but not to "a major participant in the underlying felony who acted

---

[1] All undesignated statutory references will be to the Penal Code.

4

with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f); *People v. Martinez* (2019) 31 Cal.App.5th 719, 723.)

The trial court found Salamanca was ineligible for relief because he was a "major participant" in the murder and directly "aided and abetted because he was the one who drove not one place, but three places where three different crimes occurred." The court therefore denied Salamanca's petition without issuing an order to show cause or holding an evidentiary hearing.

Salamanca argues that with respect to both his murder and attempted murder convictions, the court erred in denying his petition without issuing an order to show cause.

## A.    Murder Conviction

Respondent concedes that the trial court should have issued an order to show cause as to Salamanca's murder conviction. We agree.

Section 1170.95 permits "[a] person convicted of felony murder or murder under a natural and probable consequences theory" to petition the sentencing court to vacate the conviction and resentence on any remaining counts if the person could not be convicted of murder under the new section 188. (§ 1170.95, subd. (a).) A petition for relief under section 1170.95 must include: "(A) A declaration by the petitioner that he or she is eligible for relief under this section, based on all the requirements of subdivision (a). [¶] (B) The superior court case number and year of the petitioner's conviction. [¶] (C) Whether the petitioner requests the appointment of counsel." (§ 1170.95, subd. (b)(1).)

If the petition contains the required information, the court must "review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the

5

provisions of [section 1170.95]." (§ 1170.95, subd. (c).) If the petitioner has made this initial prima facie showing, he or she is entitled to appointed counsel, if requested, and the prosecutor must file a response, and the petitioner may file a reply. (*Ibid*.) The court then reviews the petition a second time. If it concludes in light of this briefing that the petitioner has made a prima facie showing of entitlement to relief, it must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder conviction and recall the sentence and resentence the petitioner on any remaining counts. (*Id*. at subds. (c) & (d)(1).)

To determine whether a petitioner has made a prima facie case for relief under section 1170.95, a trial court may look to the record of conviction, including the court file and the opinion from the petitioner's original appeal from his or her conviction. The contents of the record of conviction defeat a prima facie showing when the record shows as a matter of law that the petitioner is not eligible for relief.

Here, the record of conviction does not establish as a matter of law that Salamanca is ineligible for relief under section 1170.95. The trial court ruled that Salamanca was a major participant and a direct aider and abettor, but as Respondent concedes, the record of conviction does not establish this fact as a matter of law. Trial court's authority at the prima facie stages is limited to consideration of "readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion (such as determining whether the petitioner showed reckless indifference to human life in the commission of the crime)." (*People v. Drayton* (2020) 47 Cal.App.5th 965, 980.) Nothing in

the record of conviction establishes that Salamanca was necessarily a major participant in the murder, nor that he was convicted as a direct aider and abettor.  The matter should therefore be remanded for an order to show cause and evidentiary hearing under section 1170.95, subdivision (d).

**B.    Attempted Murder Conviction**

Salamanca further argues that a section 1170.95 hearing should be conducted concerning his conviction for attempted murder.  Every court that has considered this issue has rejected it.  (*People v. Harris* (2021) 60 Cal.App.5th 557, 570; *People v. Alaybue* (2020) 51 Cal.App.5th 207, 222-223; see also *People v. Love* (2020) 55 Cal.App.5th 273, 285, review granted Dec. 16, 2020, S265445; *People v. Larios* (2019) 42 Cal.App.5th 956, 970, review granted Feb. 26, 2020, S259983; *People v. Medrano* (2019) 42 Cal.App.5th 1001, 1017-1018, review granted Mar. 11, 2020, S259948; *People v. Munoz* (2019) 39 Cal.App.5th 738, 754, review granted Nov. 26, 2019, S258234; *People v. Lopez* (2019) 38 Cal.App.5th 1087, 1105, review granted Nov. 13, 2019, S258175.)

We agree with these decisions on this point.  The plain language of section 1170.95, subdivision (a) limits relief to persons "convicted of felony murder or murder under a natural and probable consequences theory."  No language in section 1170.95 mentions relief to persons convicted of attempted murder.

## DISPOSITION

The trial court's order denying Salamanca's petition is reversed as to his murder conviction and affirmed as to his attempted murder conviction, and the matter remanded for further proceedings.

NOT TO BE PUBLISHED

CHANEY, J.

We concur:

BENDIX, Acting P. J.

FEDERMAN, J.[*]

---

[*] Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.