BAKER, Acting P. J.
*861 *721 When Los Angeles County firefighters responded to a call of an SUV on fire, they discovered a dead body in the back of the burning vehicle. The body was identified as the late Christopher Waters (Waters), and two high-school seniors, defendant and appellant Jose Angel *722 Martinez (defendant) and Adrian Berumen (Berumen) were arrested and charged with Waters' murder. A jury found defendant guilty of first degree murder and arson.[1] In the unpublished portion of our opinion we decide two instructional error claims defendant raises in his principal briefs on appeal: (1) whether the trial court prejudicially erred in giving the jury self-defense instructions based on pre-trial statements defendant made to investigators even though, at trial, defendant did not ask for self-defense instructions and did not assert, when testifying, that he acted in self-defense; and (2) whether the trial court should have given a lesser related offense instruction absent the prosecution's concurrence. In the published portion of our opinion, we decide the issue defendant raises in supplemental briefing, namely, whether on direct appeal he can avail himself of the ameliorative benefits of Senate Bill 1437, which changes the law on what mental state is required to be guilty of murder.
I. BACKGROUND**
II. DISCUSSION
Defendant argues the trial court erred by instructing the jury on self-defense and by declining to give the jury instructions on the lesser-related offense of being an accessory after the fact. Although we can understand why the trial court thought it should instruct on self-defense in light of defendant's police interview statements, it was error to give self-defense instructions that defendant did not request and that were contrary to his theory of the case at trial. The error, however, was harmless because the self-defense instructions the court gave did not contribute to the verdict obtained, particularly in light of (a) other instructions given by the trial court that warned the jury of the possibility that not all of the instructions were necessarily applicable, and (b) the absence of any reference to self-defense in the defense closing argument. As for defendant's contention that the court should have instructed on the lesser related offense of being an accessory after the fact, the trial court did not err when it declined to give such an instruction in the absence of the prosecution's consent, as binding authority holds ( People v. Birks (1998) 19 Cal.4th 108, 77 Cal.Rptr.2d 848, 960 P.2d 1073 ( Birks ) ).
Defendant additionally argues he is now entitled to the ameliorative benefits of the recently enacted Senate Bill 1437. Senate Bill 1437 made statutory changes altering the definitions of malice and first and second degree murder. The legislation also established a procedure by which defendant and others who have sustained a murder *862 conviction that arguably rests on a felony murder or a natural and probable consequences theory of liability may petition the sentencing court to hear additional evidence and, if appropriate, vacate the murder conviction if inconsistent with now-governing law. Notwithstanding the enactment of this procedure for retroactive relief, defendant argues he should be able to avail himself of the ameliorative benefits of Senate Bill 1437 on direct appeal. We hold to the contrary, concluding the Legislature's enactment of the petitioning procedure evinces an intent to limit retroactive application of Senate Bill 1437. Defendant may seek Senate Bill 1437 relief, but he must do so via the procedural avenue provided by the legislation, which will permit the trial court to take additional evidence that may bear on defendant's liability for murder.
A.-B.***
C. Senate Bill 1437
On September 30, 2018, while defendant's appeal was pending, the Governor signed Senate Bill 1437. The legislation, which became effective on January 1, 2019, addresses certain aspects of California law regarding felony murder and the natural and probable consequences doctrine by amending sections 188 and 189, as well as by adding section 1170.95, which provides a procedure by which those convicted of murder can seek retroactive relief if the changes in law would affect their previously sustained convictions. (Stats. 2018, ch. 1015, §§ 2-4.) Defendant requested the opportunity to submit supplemental briefing on the effect of Senate Bill 1437 and we received supplemental briefs from both sides.
*723 1. Pertinent provisions
Senate Bill 1437 was enacted to "amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) Substantively, Senate Bill 1437 accomplishes this by amending section 188, which defines malice, and section 189, which defines the degrees of murder, and as now amended, addresses felony murder liability. Senate Bill 1437 also adds the aforementioned section 1170.95, which allows those "convicted of felony murder or murder under a natural and probable consequences theory ... [to] file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts ...." (§ 1170.95, subd. (a).)
An offender may file a petition under section 1170.95 where all three of the following conditions are met: "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[;] [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder[;] [¶] [and] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a)(1)-(3).)
*863 Pursuant to section 1170.95, subdivision (c), the petition shall include, among other things, a declaration by the petitioner stating he or she is eligible for relief based on all three aforementioned requirements of subdivision (a). A trial court that receives a petition under section 1170.95 "shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section." (§ 1170.95, subd. (c).) If the petitioner has made such a showing, the trial court "shall issue an order to show cause." (§ 1170.95, subd. (c).)
The trial court must then hold a hearing "to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence." (§ 1170.95, subd. (d)(1).) "The parties may waive a resentencing hearing and stipulate that the petitioner is eligible to have his or her murder conviction vacated and for resentencing. If there was a prior finding by a court or jury that the petitioner did not act with reckless *724 indifference to human life or was not a major participant in the felony, the court shall vacate the petitioner's conviction and resentence the petitioner." (§ 1170.95, subd. (d)(2).) Significantly, if a hearing is held, "[t]he prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens." (§ 1170.95, subd. (d)(3).) "[T]he burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (§ 1170.95, subd. (d)(3).) "If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges." (§ 1170.95, subd. (d)(3).)
Section 1170.95, subdivision (f) states: "This section does not diminish or abrogate any rights or remedies otherwise available to the petitioner."
2. Retroactivity of Senate Bill 1437
The information filed against defendant charged him with murder under section 187, subdivision (a). Among the instructions given to the jury were instructions that allowed the jury to convict defendant of first degree murder pursuant to either a felony murder theory or the natural and probable consequences doctrine, as both were defined prior to the effective date of Senate Bill 1437. Defendant was convicted of first degree murder.
Defendant contends Senate Bill 1437 applies retroactively to him, he argues retroactive application of the amended law means the trial court advised the jury incorrectly on the elements of murder, and he asks us to reverse his conviction and remand for a new trial. Defendant relies on retroactivity principles espoused in In re Estrada (1965) 63 Cal.2d 740, 48 Cal.Rptr. 172, 408 P.2d 948 ( Estrada ) to assert he need not file a petition under section 1170.95 because his conviction is not yet final. The Attorney General, by contrast, argues defendant must proceed only by way of a petition pursuant to section 1170.95 and cannot circumvent that process by seeking retroactive relief in this appeal. The Attorney General has the better argument.
Our Supreme Court recently summarized the principles articulated in Estrada , supra , 63 Cal.2d 740, 48 Cal.Rptr. 172, 408 P.2d 948 : " '[A]n amendatory statute lessening punishment is presumed to apply in all cases not yet reduced to final judgment as of the amendatory statute's effective date' ( *864 People v. Floyd (2003) 31 Cal.4th 179, 184, 1 Cal.Rptr.3d 885, 72 P.3d 820 [ ], citing Estrada , at p. 744, 48 Cal.Rptr. 172, 408 P.2d 948 ), unless the enacting body 'clearly signals its intent to make the amendment prospective, by the inclusion of either an express saving clause or its equivalent' ( *725 People v. Nasalga (1996) 12 Cal.4th 784, 793, 50 Cal.Rptr.2d 88, 910 P.2d 1380 [ ]; see Estrada , at p. 747, 48 Cal.Rptr. 172, 408 P.2d 948 ). This rule rests on an inference that when the Legislature has reduced the punishment for an offense, it has determined the 'former penalty was too severe' ( Estrada , at p. 745, 48 Cal.Rptr. 172, 408 P.2d 948 ) and therefore 'must have intended that the new statute imposing the new lighter penalty ... should apply to every case to which it constitutionally could apply' ( ibid . )." ( People v. DeHoyos (2018) 4 Cal.5th 594, 600, 229 Cal.Rptr.3d 687, 412 P.3d 368 ( DeHoyos ).)
Two recent California Supreme Court opinions in circumstances analogous to those here point the way to the proper resolution of whether Senate Bill 1437 should be given retroactive effect on direct appeal notwithstanding the bill's enactment of the section 1170.95 petitioning procedure.
In People v. Conley (2016) 63 Cal.4th 646, 203 Cal.Rptr.3d 622, 373 P.3d 435 ( Conley ), our Supreme Court considered whether Estrada 's holding compelled a conclusion that the Three Strikes Reform Act of 2012, commonly known as Proposition 36, applied retroactively to defendants whose judgments were not yet final. ( Id . at pp. 655-656, 203 Cal.Rptr.3d 622, 373 P.3d 435.) The defendant in Conley had been sentenced to an indeterminate term of 25 years to life under the Three Strikes law. Voters passed Proposition 36 while his appeal was pending ( id. at pp. 654-655, 203 Cal.Rptr.3d 622, 373 P.3d 435 ), and the initiative reduced the penalty for some third strike offenders whose third strike was not a serious or violent felony ( id. at p. 652, 203 Cal.Rptr.3d 622, 373 P.3d 435 ). Proposition 36 also created a post-conviction procedure that allowed prisoners who were already serving indeterminate life terms to seek resentencing for offenses that, if committed after the act's effective date, would no longer support life terms. (§ 1170.126, subd. (b).)
The defendant in Conley argued he was entitled to rely on Estrada 's retroactivity rule, which would enable him to seek Proposition 36 relief without complying with the initiative's petition procedure. ( Conley , supra , 63 Cal.4th at pp. 654-655, 203 Cal.Rptr.3d 622, 373 P.3d 435.) That procedure, among other things, gives trial judges discretion to withhold Proposition 36 relief if a judge finds that resentencing the petitioner would pose an unreasonable risk of danger to public safety. ( Ibid . ; § 1170.126, subd. (f).)
Our Supreme Court rejected defendant Conley's argument and held the post-conviction procedure provided by section 1170.126 was the exclusive means by which those who had been sentenced before Proposition 36's effective date could seek relief under the new law. ( Conley , supra , 63 Cal.4th at pp. 661-662, 203 Cal.Rptr.3d 622, 373 P.3d 435.) The Court acknowledged the continuing vitality of the Estrada rule in the unremarkable case of an ameliorative statute silent on whether it applies retroactively, but the Supreme Court concluded Conley was not entitled, on direct appeal, to invoke Proposition 36's changes to prior law for three principal reasons.
*726 First, Proposition 36 was "not silent on the question of retroactivity" but instead "expressly addresse[d] the question in section 1170.126, the sole purpose of which is to extend the benefits of [Proposition 36] retroactively." ( *865 Conley , supra , 63 Cal.4th at p. 657, 203 Cal.Rptr.3d 622, 373 P.3d 435.) In doing so, Proposition 36 did not distinguish between persons serving final sentences and those serving nonfinal sentences. ( Ibid . )
Second, Proposition 36 made resentencing contingent on a court's evaluation of a defendant's dangerousness. Conferring an automatic entitlement to resentencing on defendants whose cases were still pending on direct appeal would not allow courts to conduct that inquiry, and the court found no basis to hold the electorate intended "for courts to bypass the public safety inquiry altogether in the case of defendants serving sentences that are not yet final." ( Conley , supra , 63 Cal.4th at pp. 658-659, 203 Cal.Rptr.3d 622, 373 P.3d 435.)
Third, the changes in law worked by Proposition 36 not only reduced previously prescribed criminal penalties but also established "a new set of disqualifying factors that preclude a third strike defendant from receiving a second strike sentence," factors that the prosecution was required to plead and prove. ( Conley , supra , 63 Cal.4th at p. 659, 203 Cal.Rptr.3d 622, 373 P.3d 435.) Because Proposition 36 did not address the complexities involved in applying the pleading-and-proof requirements to previously sentenced defendants, the court concluded the electorate did not contemplate those provisions would apply to previously sentenced defendants. ( Id. at pp. 660-661, 203 Cal.Rptr.3d 622, 373 P.3d 435.) Rather, they intended such defendants to seek relief under section 1170.126, which did not contain pleading-and-proof requirements.
Our Supreme Court reached a similar result in DeHoyos , supra , 4 Cal.5th 594, 229 Cal.Rptr.3d 687, 412 P.3d 368, which presented the question of whether Proposition 47 ("the Safe Neighborhoods and Schools Act") applied retroactively to nonfinal cases on direct appeal. "Proposition 47 redefined several common theft- and drug-related felonies as either misdemeanors or felonies" and enacted a petitioning procedure similar to that enacted as part of Proposition 36. ( Id. at p. 597, 229 Cal.Rptr.3d 687, 412 P.3d 368.) The DeHoyos court noted Proposition 47, like Proposition 36, was "an ameliorative criminal law measure that is 'not silent on the question of retroactivity,' but instead contain[ed] a detailed set of provisions designed to extend the statute's benefits retroactively." ( Id. at p. 603, 229 Cal.Rptr.3d 687, 412 P.3d 368.) Those provisions included a recall of sentence petitioning mechanism for individuals "serving a sentence" for a covered offense as of Proposition 47's effective date. (§ 1170.18, subd. (a).)
As it did in Conley when analyzing Proposition 36, the DeHoyos court found it significant that Proposition 47's recall of sentence petitioning mechanism drew "no express distinction between persons serving final *727 sentences and those serving nonfinal sentences, instead entitling both categories of prisoners to petition courts for recall of sentence" and "expressly ma[king] resentencing dependent on a court's assessment of the likelihood that a defendant's early release will pose a risk to public safety, undermining the idea that voters 'categorically determined that "imposition of a lesser punishment" will in all cases "sufficiently serve the public interest." ' ( Conley , [supra , 63 Cal.4th] at p. 658 [203 Cal.Rptr.3d 622, 373 P.3d 435] ; see § 1170.18, subd. (b).)" ( DeHoyos , supra , 4 Cal.5th at p. 603, 229 Cal.Rptr.3d 687, 412 P.3d 368.) The DeHoyos court acknowledged Proposition 47 differed from Proposition 36 in that it did not "create new sentencing factors that the prosecution must 'plead[ ] and prove[ ]' ( [ ]§ 1170.12, subd. (c)(2)(C) ) to preclude a grant of leniency." ( Ibid . ) The Court explained, *866 however, that other indicia of legislative intent, including Proposition 47's broad statement of purpose, revealed the initiative's petitioning procedure was meant to be the exclusive avenue for retroactive relief for all previously sentenced defendants, whether or not their sentences were final. ( Ibid. )
The analytical framework animating the decisions in Conley and DeHoyos is equally applicable here. Like Propositions 36 and 47, Senate Bill 1437 is not silent on the question of retroactivity. Rather, it provides retroactivity rules in section 1170.95. The petitioning procedure specified in that section applies to persons who have been convicted of felony murder or murder under a natural and probable consequences theory. It creates a special mechanism that allows those persons to file a petition in the sentencing court seeking vacatur of their conviction and resentencing. In doing so, section 1170.95 does not distinguish between persons whose sentences are final and those whose sentences are not. That the Legislature specifically created this mechanism, which facially applies to both final and nonfinal convictions, is a significant indication Senate Bill 1437 should not be applied retroactively to nonfinal convictions on direct appeal.
The remainder of the procedure outlined in section 1170.95 underscores the Legislative intent to require those who seek retroactive relief to proceed by way of that statutorily specified procedure. The statute requires a petitioner to submit a declaration stating he or she is eligible for relief based on the criteria in section 1170.95, subdivision (a). (§ 1170.95, subd. (b)(1)(A).) Where the prosecution does not stipulate to vacating the conviction and resentencing the petitioner, it has the opportunity to present new and additional evidence to demonstrate the petitioner is not entitled to resentencing. (§ 1170.95, subd. (d)(3).) The petitioner, too, has the opportunity to present new or additional evidence on his or her behalf. (§ 1170.95, subd. (d)(3).) Providing the parties with the opportunity to go beyond the original record in the petition process, a step unavailable on direct appeal, is strong evidence the Legislature intended for persons seeking the ameliorative benefits of Senate Bill 1437 to proceed via the petitioning procedure. The provision permitting *728 submission of additional evidence also means Senate Bill 1437 does not categorically provide a lesser punishment must apply in all cases, and it also means defendants convicted under the old law are not necessarily entitled to new trials. This, too, indicates the Legislature intended convicted persons to proceed via section 1170.95's resentencing process rather than avail themselves of Senate Bill 1437's ameliorative benefits on direct appeal.
Defendant resists this conclusion, arguing Conley and DeHoyos are distinguishable because the petitioning procedures enacted by Propositions 36 and 47 conditioned sentencing relief on a trial court finding that the defendant would not pose an unreasonable risk of danger if released, and section 1170.95 contains no such requirement. While defendant is correct that section 1170.95 does not require a dangerousness inquiry, neither Conley nor DeHoyos holds that inquiry was the indispensable statutory feature on which the result in those cases turned. To the contrary, Conley notes "[o]ur cases do not 'dictate to legislative drafters the forms in which laws must be written' to express an intent to modify or limit the retroactive effect of an ameliorative change; rather, they require 'that the Legislature demonstrate its intention with sufficient clarity that a reviewing court can discern and effectuate it.' " ( Conley , supra , 63 Cal.4th at pp. 656-657, 203 Cal.Rptr.3d 622, 373 P.3d 435 ; see also *867 People v. Superior Court (Lara ) (2018) 4 Cal.5th 299, 312, 228 Cal.Rptr.3d 394, 410 P.3d 22 [explaining Conley held Estrada 's inference of retroactivity was inapplicable because "the legislation contained its own retroactivity provision "].) Accordingly, we look not for specific procedural conditions, but for indicia of the Legislature's intent. Here, as we have already detailed, the other indications the Legislature intended to restrict individuals who have already been convicted to the petitioning procedure outlined in section 1170.95 are considerable.
Defendant additionally argues his right to seek reversal of his conviction on direct appeal is supported by other cases in which defendants were allowed to argue a conviction must be reversed on direct appeal due to a legislative change in the elements of a criminal offense. Both cases defendant cites in support of this argument involved changes to the substantive elements of the defendants' crimes before their sentences were final ( People v. Ramos (2016) 244 Cal.App.4th 99, 197 Cal.Rptr.3d 738 ; People v. Collins (1978) 21 Cal.3d 208, 145 Cal.Rptr. 686, 577 P.2d 1026 ), but neither involved a new or amended law that "modif[ied], limit[ed], or entirely forb[ade] the retroactive application of ameliorative criminal law amendments." ( Conley , supra , 63 Cal.4th at p. 656, 203 Cal.Rptr.3d 622, 373 P.3d 435.) They are thus inapposite here.
Defendant further contends section 1170.95, subdivision (f) supports his argument for direct appeal retroactivity because it states: "This section does not diminish or abrogate any rights or remedies otherwise available to the *729 petitioner." The court in Conley rejected a similar argument concerning an analogous provision included in the text of Proposition 36, reasoning that provision "contain[ed] no indication that automatic resentencing-as opposed to, for example, habeas corpus relief-ranks among the 'rights' the electorate sought to preserve." ( Conley , supra , 63 Cal.4th at pp. 661-662, 203 Cal.Rptr.3d 622, 373 P.3d 435.) We reach the same conclusion here, where there is no indication that reversal of a defendant's sentence on direct appeal without compliance with the procedures outlined in section 1170.95 was among the "rights" the Legislature sought to preserve in enacting Senate Bill 1437.
We add a final note, albeit on a point not raised by defendant. Although we hold the section 1170.95 petition procedure is the avenue by which defendants with nonfinal sentences of the type specified in section 1170.95, subdivision (a) must pursue relief, we are cognizant of the possibility that some defendants may believe themselves able to present a particularly strong case for relief under the changes worked by Senate Bill 1437 and wish to seek that relief immediately rather than await the full exhaustion of their rights to directly appeal their conviction. Our holding today does not foreclose such immediate relief in an appropriate case.
Once a notice of appeal is filed, jurisdiction vests in the appellate court until the appeal is decided on the merits and a remittitur issues. ( People v. Awad (2015) 238 Cal.App.4th 215, 220, 189 Cal.Rptr.3d 404 ( Awad ); see also People v. Scarbrough (2015) 240 Cal.App.4th 916, 923, 193 Cal.Rptr.3d 125.) But a defendant retains the option of seeking to stay his or her pending appeal to pursue relief under Senate Bill 1437 in the trial court. A Court of Appeal presented with such a stay request and convinced it is supported by good cause can order the pending appeal stayed with a limited remand to the trial court for the sole purpose of permitting the trial court to rule on a petition under section 1170.95. (See, e.g., Awad , supra , at p. 222, 189 Cal.Rptr.3d 404.) In those cases where *868 a stay is granted and a section 1170.95 petition is successful, the direct appeal may either be fully or partially moot. If the petition is unsuccessful, a defendant may seek to augment the appellate record, as necessary, to proceed with any issues that remain for decision.
In light of our conclusion that defendant must file a section 1170.95 petition in the trial court to seek retroactive relief under Senate Bill 1437, we express no view on whether he should be granted Senate Bill 1437 relief. That will be a question for the trial court in the first instance, if a section 1170.95 petition is filed.
*730 DISPOSITION
The judgment is affirmed.
We concur:
KIM, J.
JASKOL, J.†

The criminal proceedings against Berumen are not before us in this appeal.

See footnote *, ante .

See footnote *, ante .

Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.