Filed 6/24/21  P. v. Riley CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JACK DEWAYNE RILEY,<br><br>    Defendant and Appellant. | E075100<br><br>(Super.Ct.No. RCR19436)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Elia V. Pirozzi, Judge.  Reversed and remanded with directions.

Alan S. Yockelson, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Meredith S. White and Robin Urbanski, Deputy Attorneys General, for Plaintiff and Respondent.

I

INTRODUCTION

Defendant and appellant Jack Dewayne Riley appeals from a postjudgment order denying his Penal Code[1] section 1170.95 petition to vacate his second degree murder conviction and obtain resentencing under the procedures established by Senate Bill No. 1437 (Senate Bill 1437). Defendant argues the trial court erred in finding him ineligible for relief as a matter of law because the court misconstrued his record of conviction in finding he was not convicted under the natural and probable consequences doctrine or under the felony-murder theory. The People agree the record shows defendant could have been convicted of murder under the natural and probable consequences doctrine, and therefore the matter must be remanded to the trial court for it to issue an order to show cause and conduct an evidentiary hearing to determine whether relief should be granted.

Having thoroughly reviewed the record, we reverse the trial court's order because the record of conviction does not show as a matter of law that defendant is not entitled to resentencing. We thus remand the case to the trial court to issue an order to show cause and conduct an evidentiary hearing.

---

[1] All future statutory references are to the Penal Code unless otherwise stated.

II

FACTUAL AND PROCEDURAL BACKGROUND

A.    *Factual Background*[2]

On the night of June 11, 1991, Carol Romine was working as a prostitute.  Scott Hayden, riding a motorcycle, approached Romine; Romine agreed to a sexual act in exchange for $40.  Romine and Hayden retired to Romine's motel room, where Hayden gave Romine the $40 and they engaged in the agreed-upon sexual act.

Hayden afterward produced a pistol from his duffel bag, held the gun to Romine's head, and demanded his money back.  Romine gave Hayden the $40.

Michael Rowe, Romine's boyfriend, was in another room of the motel and happened to observe Hayden holding the gun to Romine's head.  Rowe, with the aid of a friend, accosted Hayden as Hayden was leaving Romine's room.  Rowe put his hand in Hayden's back and told him to "freeze."  Hayden dropped his duffel bag and put his hands in the air.  Romine came out of her room, yelling that she had been robbed; Rowe told someone to call the police.  Hayden said he was not waiting for the police.  Rowe retrieved the $40 from Hayden's pocket as Hayden mounted his motorcycle and left.  In a loud, angry voice, Hayden vowed to return.  Fearing Hayden, Rowe and Romine moved to a different motel room, in possession of the $40 and Hayden's duffel bag.  Hayden's gun was inside the duffel bag.

---

[2]  The factual background is taken verbatim from this court's partially published opinion in defendant's direct appeal, case No. E011269, which is part of the record on appeal in this case.  (*People v. Riley* (1993) 20 Cal.App.4th 1808, 1810-1812.)

3

Hayden returned about 30 to 45 minutes later, riding as a passenger with defendant in defendant's truck. Defendant drove slowly around the motel parking lot. The victim, David Woods, was in the parking lot with some other motel residents. Defendant stopped the truck and Hayden fired two gunshots out the driver's window. Woods fell down. After a few seconds' pause, several more shots were fired toward Woods. Witnesses observed defendant's truck drive slowly in the parking lot, exit, make a U-turn, and drive once more slowly past the motel. Woods was struck by a bullet that entered the shoulder area and exited his chest. He died in the motel parking lot.

The next day, defendant gave a gun to Lewis Rivenbark, defendant's business partner, for safekeeping. Defendant bragged that the gun had been used in a killing. When police later recovered the gun, they determined that the gun was used to fire a bullet found at the scene of the killing.

When defendant was arrested, he gave a videotaped statement to police. At first, defendant denied knowing about or being present at the shooting at the motel. Defendant claimed to have been at home all evening. When police told defendant that defendant's girlfriend failed to confirm his alibi, defendant changed his story.

Defendant told police he had come home very drunk. Hayden came to defendant's house and told him he had been robbed after patronizing a prostitute. Hayden's bag and gun were taken. Defendant suggested that they go in his truck to the motel, to try to get Hayden's possessions back. Defendant gave Hayden a .357 pistol and a speed loader.

4

Defendant drove Hayden back to the motel in defendant's truck. Hayden saw a Black man and told defendant the man had been involved in the robbery. Hayden leaned across defendant and yelled, "Hey, Ni[ ]r," out the window. Hayden, still leaning across defendant's body, rapidly fired several shots out of the driver's side window. Defendant said he did not realize Hayden was going to shoot anyone and he drove quickly away after Hayden fired the shots. Defendant did not know for sure if Hayden's shots had struck anyone. Defendant told police he had thrown the pistol away in the bottom of a lake.

Defendant testified in his own behalf at trial. He claimed he had been drinking all afternoon on the day of the shooting. That night, Hayden came to defendant's house, saying he had been robbed by three Black men. Defendant asked Hayden if he wanted to go back to the motel; Hayden said he did not want to go on his motorcycle because it would be recognized. He asked defendant to drive him to the motel, and defendant agreed. Defendant also lent Hayden a loaded revolver, and a speed loader with five more bullets.

On the way back to the motel, Hayden for the first time told defendant about the circumstances of the robbery; i.e., that Hayden had first held his gun to the prostitute's head. Defendant knew that Hayden had boasted before that he had once shot someone who robbed him. Defendant testified that, when they arrived at the motel, defendant told Hayden he would not get out of the truck and that they should go home and call the police. Defendant claimed that he did not know Hayden was going to shoot anyone, and

5

he was surprised when Hayden started firing out of the driver's window. Defendant drove immediately away. Defendant told his girlfriend to say that defendant had not left the house that evening. The next day, defendant gave the gun to Rivenbark; Rivenbark was supposed to throw the gun in a lake. When defendant later learned that Rivenbark had not disposed of the gun, defendant's lawyer contacted police and told them where they could find the gun.

A witness who was present at the motel testified that he saw Hayden, in the passenger seat, fire the shots at Woods. Defendant was leaning back while Hayden was shooting.

In rebuttal, a police officer testified that defendant told him that, when Hayden came to defendant's house on the night of the shooting, Hayden was very angry about having been robbed.

B. *Procedural Background*

In August 1991, defendant, together with Hayden, was charged in count 1 with the murder of David Woods (§ 187, subd. (a)). Count 1 also alleged that a principal to the offense was armed with a firearm under section 12022, subdivision (a)(1). Count 2 alleged that defendant was an accessory after the fact with respect to the murder (§ 32), and count 3 charged both defendant and Hayden with shooting at an inhabited dwelling (§246), and alleged both that defendant had personally used a firearm, and that a principal was armed with a firearm in the commission of the offense (§§ 1203.06, subd. (a)(1), 12022.5, 12022, subd. (a)(1)).

6

Defendant's jury trial was severed from Hayden's. In March 1992, the jury found defendant not guilty of first degree murder as charged in count 1, and was unable to reach a verdict on second degree murder. The jury found defendant guilty as to count 2 and acquitted him of the charge of shooting at an inhabited dwelling in count 3. The trial court declared a mistrial as to count 1, and the murder count was retried. At the second trial, in May 1992, a new jury found defendant guilty of second degree murder and found true the allegation that a principal was armed with a firearm in the commission of the offense. The trial court sentenced defendant to a term of 15 years to life, plus one year for the firearm enhancement.

Defendant subsequently appealed, arguing, in pertinent part, the trial court erred in instructing the jury on liability under the natural and probable consequences doctrine pursuant to CALJIC No. 3.02. On December 16, 1993, we affirmed the convictions.

On April 4, 2019, defendant in propria persona filed a petition for resentencing pursuant to section 1170.95. He claimed that he was entitled to resentencing because he was convicted of murder under the natural and probable consequences doctrine or felony-murder rule and could not now be convicted of second degree murder based on changes to sections 188 and 189 as amended by Senate Bill 1437.

The People initially opposed the petition solely on constitutional grounds, and defendant, through appointed counsel, replied to those arguments. Thereafter, the People filed a response to defendant's petition on the merits. Relying on the facts from this court's opinion from defendant's direct appeal, the People argued that those facts

7

established defendant was a major participant who acted with reckless indifference to human life.

Following further briefing and oral argument by the parties, on March 11, 2020, the trial court denied defendant's petition and issued a written order. The court explained that defendant "was determined to be a 'principal in the murder' of the victim as evidenced by the jury instructions, facts contained in the sentencing report, the abstract of judgment, verdict forms, and particularly the facts set forth in" this court's partially published decision. The court also clarified that "there is no suggestion or indication in the court file, record of conviction, or preliminary hearing transcript that Petitioner was involved in the commission of a 'target crime' [or underlying felony] for which the murder of Woods would have been reasonably foreseeable. Accordingly, he was not convicted under the natural and probable consequences doctrine. By contrast, as reflected in the Court of Appeal opinion, Petitioner was a principal in Woods' murder by virtue of his involvement and participation during the events in question. His actions and conduct in concert with those of Hayden make Petitioner directly culpable and responsible for the murder of Woods."

The court further observed, "[i]n the instant case, the court did not instruct with CALJIC 3.02, which would have been required had a murder conviction under the natural and probable consequences doctrine been sought by the prosecution or contemplated by the court. Moreover, no instruction or verdict form exists as to any other offense relating to the murder count, which also would have been necessary to support a murder

8

conviction under the natural and probable consequences doctrine." To further support its findings, the court also noted that the jury was instructed with CALJIC 17.15 (Defendant Armed in Commission of Crime) and the jury found true a principal was armed in the commission of the murder. The court concluded defendant had failed to establish a prima facie showing of entitlement to relief under section 1170.95 because he was "neither convicted under the felony murder rule nor the natural and probable consequences doctrine." Defendant timely appealed.

III

DISCUSSION

Defendant argues the trial court erred in concluding he had not made a prima facie showing of eligibility for relief because the court misconstrued the record of conviction in finding he was not convicted under the natural and probable consequences doctrine and, therefore, the court erred in denying his petition without issuing an order to show cause and holding an evidentiary hearing on his murder conviction. The People concede the error and agree that the denial should be reversed and remanded with directions to issue an order to show cause and conduct a hearing. As we explain, we agree with the parties.

Prior to the enactment of Senate Bill 1437, a defendant who aided and abetted a crime that resulted in a victim's death could be convicted under the natural and probable consequences theory even if the defendant did not act with malice. (*People v. Offley* (2020) 48 Cal.App.5th 588, 595 (*Offley*).) "The natural and probable consequences

9

doctrine provides that ' "[a] person who knowingly aids and abets criminal conduct is guilty of not only the intended crime [target offense] but also of any other crime the perpetrator actually commits [nontarget offense] that is a natural and probable consequence of the intended crime . . . ." [Citation.]' [Citation.] The doctrine ' "imposes vicarious liability for any offense committed by the direct perpetrator that is a natural and probable consequence of the target offense . . . ." [Citation.]' " (*People v. Duke* (2020) 55 Cal.App.5th 113, 120, review granted Jan. 13, 2021, S265309.)

The Legislature enacted Senate Bill 1437 "after determining that there was further 'need for statutory changes to more equitably sentence offenders in accordance with their involvement in homicides.' " (*People v. Gentile* (2020) 10 Cal.5th 830, 838-839.) Senate Bill 1437 changed the law on murder as it relates to the felony-murder rule and the natural and probable consequences doctrine. (*People v. Martinez* (2019) 31 Cal.App.5th 719, 722.) Senate Bill 1437 also added section 1170.95, which allows defendants convicted of murder based on the natural and probable consequences doctrine or felony-murder rule to petition for resentencing. (*People v. Martinez*, at pp. 722-723.) Senate Bill 1437 did not alter the viability of a murder conviction based on direct aiding and abetting liability. "One who directly aids and abets another who commits murder is thus liable for murder under the new law just as he or she was liable under the old law." (*Offley*, *supra*, 48 Cal.App.5th at p. 596.)

"Under section 1170.95, subdivision (a), 'A person convicted of felony murder or murder under a natural and probable consequences theory may file a petition with the

10

court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply: [¶] (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine. [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder. [¶] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019.' " (*People v. Nguyen* (2020) 53 Cal.App.5th 1154, 1164.)

Under section 1170.95, subdivision (b), a petitioner initiates the process of seeking resentencing by filing a petition in the sentencing court that is facially sufficient, containing certain basic information and a declaration from the petitioner that he or she is eligible for relief. (*People v. Cooper* (2020) 54 Cal.App.5th 106, 114, review granted Nov. 10, 2020, S264684.) The court then determines whether the petitioner has made a prima facie showing that he or she qualifies for relief. (§ 1170.95, subd. (c).) If the petitioner makes a prima facie showing that he or she is eligible for and entitled to relief under the statute, then the trial court "shall issue an order to show cause." (§ 1170.95, subds. (b) & (c); *People v. Verdugo* (2020) 44 Cal.App.5th 320, 327-329, review granted Mar. 18, 2020, S260493 (*Verdugo*).)

11

" 'A prima facie showing is one that is sufficient to support the position of the party in question.' " (*People v. Lewis* (2020) 43 Cal.App.5th 1128, 1137, review granted Mar. 18, 2020, S260598.)  When conducting a prima facie review, the court's "role . . . is simply to decide whether the petitioner is ineligible for relief as a *matter of law*, making all factual inferences in favor of the petitioner." (*Verdugo*, *supra*, 44 Cal.App.5th at p. 329, italics added.)  Whether a petitioner has made the requisite prima facie showing is a predominantly legal question.  We thus review the trial court's ruling de novo.  (*People v. Drayton* (2020) 47 Cal.App.5th 965, 981.)

Here, the record affirmatively demonstrated that defendant was charged with murder, that the jury was instructed on second degree murder *and* the natural and probable consequences doctrine, and that the jury returned verdicts of second degree murder as to defendant.  In light of that record, the trial court could not determine at the initial stage of the process—as a matter of law and without resort to factfinding—that the jury did not base its second degree murder finding on the natural and probable consequences doctrine.  (*Verdugo*, *supra*, 44 Cal.App.5th at p. 329.)  Because the record showed that defendant could have been convicted under a theory of murder that was no longer viable under the revisions to sections 188 and 189, the court erred in denying the petition at this stage in the proceedings.  Accordingly, the order denying the petition must be reversed and the matter remanded with directions to issue an order to show cause and hold a hearing under section 1170.95, subdivision (d).

IV

DISPOSITION

The order denying defendant's petition for resentencing under section 1170.95 is reversed and the matter is remanded with directions to hold further proceedings on the petition. Upon remand, the trial court shall issue an order to show cause and conduct a hearing in accordance with section 1170.95, subdivision (d).

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

<u>CODRINGTON</u>
Acting P. J.

We concur:


<u>SLOUGH</u>
J.


<u>FIELDS</u>
J.

13