Filed 9/23/21; Certified for Publication 10/18/21 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>MARTY DOMINGUEZ,<br><br>  Defendant and Appellant. | D077859<br><br><br>(Super. Ct. No. CR105918) |

APPEAL from an order of the Superior Court of San Diego County, Howard H. Shore, Judge.  Affirmed.

Randi Covin, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael Pulos, Lynne McGinnis, and Britton B. Lacy, Deputy Attorneys General, for Plaintiff and Respondent.

In March 1990, a jury convicted Marty Dominguez of second degree murder (Pen. Code,[1] § 187) and found true an allegation that Dominguez was armed with a deadly weapon during the commission of the offense (§ 12022, subd. (a)). The court sentenced Dominguez to prison for 21 years to life.

Dominguez appealed, and we affirmed the judgment in an unpublished opinion, *People v. Dominguez*, December 16, 1991, D012153 (unpub. opn.) (*Dominguez I*).

In January 2019, Dominguez filed a petition for resentencing under section 1170.95, which permits a defendant convicted of murder under a felony-murder theory or the natural and probable consequences doctrine to petition for the conviction to be vacated and resentenced. (§ 1170.95, subd. (a).) The superior court found that Dominguez did not make a prima facie showing that he was entitled to relief and denied the petition.

Dominguez appeals, contending the court erred in determining his petition did not establish a prima facie case for relief. We conclude the superior court properly considered the record of conviction to determine as a matter of law that Dominguez is ineligible for relief under section 1170.95, and we affirm the order.

FACTUAL AND PROCEDURAL BACKGOUND[2]

"On the evening of June 9, 1989, Paul [M.], his brother Mark and a friend, Elvis [W.], were walking down Iona Street on their way home when someone yelled from a passing car with four occupants. The car made a U-turn and pulled alongside the three pedestrians. An argument ensued

---

[1] Statutory references are to the Penal Code unless otherwise specified.

[2] We take the facts of the underlying conviction directly from our opinion in *Dominguez I, supra,* D012153.

2

between Paul and Dominguez who was in the car. At one point, Paul said, 'Fuck you, Mexicans. You can't tell me how to talk.' He threw down his jacket and challenged the vehicle's occupants to fight. While Paul's companions were restraining him, a person with a firearm alighted from the vehicle. He tried to shoot but the gun would not fire. Dominguez told the man not to shoot and pushed him back to the car. Dominguez and one of Paul's companions shook hands and Dominguez said to Paul, 'I'll deal with you another day.' The car pulled down the street and stopped. Dominguez offered to finish the fight. He then told a companion, 'Go ahead, shoot, shoot.' The companion started shooting, hitting Paul three times. One shot was fatal.

"Dominguez testified he lived with co-defendant Debra . . . [G.] and several children down the block from the incident. He left the children home while he and [Debra] went to get some food. On the way, they gave a ride to two men they saw on the street. The men told them they wanted a ride because they were having trouble with some Black people. The car pulled over so Dominguez could talk with the group of Black[ ] [people]. Paul became loud and abusive. After Dominguez returned to the car, they proceeded down the street. One of the two men asked to get out. [Debra] pulled over, the man alighted and Dominguez heard a series of gunshots. The men returned to the car and [Debra] sped away.

"The prosecution presented evidence [Debra]'s 11-year-old child told officers after the incident Dominguez had left the house with a relative, Larry [D.], the man identified as the shooter. The trial court denied Dominguez's motion to suppress this statement."

Dominguez appealed his conviction, arguing the trial court erred in admitting the 11-year-old's statement because it was the product of an illegal

3

entry in the home.  We concluded the trial court did not err.  (*Dominguez I*, *supra*, D012153.)

Dominguez filed a petition for resentencing under section 1170.95 in January 2019.  The superior court then appointed Dominguez counsel and set a briefing schedule.

In February 2019, after requesting and receiving an extension to file a response, the People filed a motion to dismiss the petition based on the alleged unconstitutionality of Senate Bill No. 1437 (Stats. 2018, ch. 1015) (Senate Bill 1437).  The People's motion was accompanied by two exhibits, one of which a copy of our unpublished opinion in *Dominguez I*, *supra*, D012153.  In March 2019, Dominguez's appointed counsel filed a response to the People's motion.  Dominguez's response was accompanied by three exhibits consisting of excerpts from the record on appeal in *Dominguez I*.  The People then filed a reply.

In May 2019, the superior court stayed the proceedings until this court issued its ruling on the constitutionality of Senate Bill 1437.  After we determined that Senate Bill 1437 was constitutional (see *People v. Lamoureux* (2019) 42 Cal.App.5th 241, 257-264), in June 2020, the People filed a response to Dominguez's petition asking the court to deny the petition based on Dominguez's failure to establish a prima facie case.  The People's response attached excerpts from the record on appeal and another copy of our unpublished opinion in *Dominguez I*, *supra*, D012153.

Later in June 2020, Dominguez's appointed counsel filed a reply to the People's response to the petition, arguing that Dominguez had established a prima facie case for relief and that the court, at this juncture, could not consider this court's opinion in *Dominguez I*, *supra*, D012153.

4

In July 2020, the superior court denied the petition without ordering an evidentiary hearing, finding that Dominguez had not made a prima facie showing that he was entitled to relief.  Citing *People v. Drayton* (2020) 47 Cal.App.5th 965 (*Drayton*), the court explained that it "need not engage in any fact-finding" because the "undisputed facts as shown by the record on appeal reflect [Dominguez] aided and abetted a companion in the shooting that resulted in the victim's death."  The superior court also observed that "CALJIC instructions 3.00 and 3.01, defining principals and aiding and abetting, were given to the jury in this case," and "[a]s these instructions make clear, one who aids and abets is a principal in the commission of the crime."  The superior court explained that because the Court of Appeal's recitation of the facts "clearly establish that [Dominguez] aided and abetted the murder in this case," the superior court concluded, "[w]ithout reweighing any evidence," that Senate Bill 1437's changes to the Penal Code "do not affect [Dominguez's] case . . . ."

## DISCUSSION

## I

## THE PETITION FOR RESENTENCING UNDER SECTION 1170.95

### A.  Dominguez's Contentions

Dominguez contends the superior court erred in denying his petition without issuing an order to show cause.  To this end, he makes two primary arguments.  First, he asserts the superior court erred in relying on this court's prior opinion as well as the rest of the record of conviction at the prima facie stage of the petition process because that information could only be considered at the hearing stage.  Second, he claims that the court erred in determining this court's prior opinion and record of conviction conclusively

established his ineligibility for relief.  Dominguez requests that denial of his petition be reversed and the matter remanded for further proceedings.

### B.  Senate Bill 1437 and Section 1170.95

On September 30, 2018, the Governor signed Senate Bill 1437.  "The legislation, which became effective on January 1, 2019, addresses certain aspects of California law regarding felony murder and the natural and probable consequences doctrine by amending Penal Code sections 188 and 189, as well as by adding Penal Code section 1170.95, which provides a procedure by which those convicted of murder can seek retroactive relief if the changes in law would affect their previously sustained convictions." (*People v. Martinez* (2019) 31 Cal.App.5th 719, 722 (*Martinez*).)

By amending sections 188 (defining malice) and 189 (defining the degrees of murder), Senate Bill 1437 changed "the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life."  (Stats. 2018, ch. 1015, § 1, subd. (f); see *Martinez*, *supra*, 31 Cal.App.5th at p. 723.)

Senate Bill 1437 also added section 1170.95.  That section provides that "[a] person convicted of felony murder or murder under a natural and probable consequences theory may file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts." (§ 1170.95, subd. (a).)  A petition may be filed when the following three conditions are met:  "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine.  [¶]  (2) The petitioner

6

was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder.  [¶]  (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019."  (§ 1170.95, subd. (a)(1)-(3); see *Martinez*, *supra*, 31 Cal.App.5th at p. 723.)

If a petitioner files a facially sufficient petition, the trial court shall appoint counsel, if requested, and determine whether the petitioner has made a prima facie case for relief under section 1170.95, subdivision (c).  (*People v. Lewis* (2021) 11 Cal.5th 952, 961-962 (*Lewis*).)  In making this decision, the court should accept the petitioner's allegations as true and "should not make credibility determinations or engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' "  (*Id.* at p. 974.)  The court may, however, consider the record of the petitioner's conviction and, " 'if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' "  (*Id.* at p. 971.)

"If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause [(OSC)]."  (§ 1170.95, subd. (c).)  In that event, the court must hold a hearing within 60 days to determine whether to vacate the murder conviction.  (§ 1170.95, subd. (d)(1).)  At this stage of the proceeding, the prosecution has the burden of proving "beyond a reasonable doubt[ ] that the petitioner is ineligible for resentencing."  (§ 1170.95, subd. (d)(3); *Martinez*, *supra*, 31 Cal.App.5th at pp. 723-724.)

7

C.  Analysis

Dominguez's challenge of the superior court's use of the record of conviction below presents a question of statutory interpretation, which we review de novo.  (*Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1332.)

Dominguez contends that in denying this petition, the superior court improperly considered the record of conviction before ordering an OSC.  In addition, he claims the court could not consider our opinion in *Dominguez I*, *supra*, D012153 as part of the record of conviction.  Following the California Supreme Court's guidance in *Lewis*, *supra*, 11 Cal.5th 952, we reject these contentions.

Our high court recently affirmed that a trial court "may look at the record of conviction after the appointment of counsel to determine whether a petitioner has made a prima facie case for section 1170.95 relief."  (*Lewis*, *supra*, 11 Cal.5th at p. 971.)  *Lewis* was decided after briefing was completed in this matter, but the California Supreme Court clearly rejected Dominguez's first argument here.  Moreover, *Lewis* also affirmed that "[a]ppellate opinions . . . are generally considered to be part of the record of conviction."  (*Id.* at p. 972.)  Because *Lewis* forecloses Dominguez's argument that the superior court improperly used the record of conviction, we turn to Dominguez's final point that the record of conviction here did not allow the superior court to conclude he was ineligible for relief as a matter of law.

Dominguez contends he is entitled to a full evidentiary hearing because his jury in 1990 was presented with two theories, i.e., direct aiding and abetting and natural and probable consequences, and the record does not conclusively demonstrate that he was convicted under a theory now permitted under section 1170.95.  Here, there is no dispute Dominguez was not the actual killer.  However, the prosecution tried Dominguez on the

8

theory that he aided and abetted the murder by telling the shooter, "Go ahead, shoot, shoot." Primarily based on this evidence and the fact the jury was provided with an aiding and abetting jury instruction, the superior court found Dominguez's record of conviction showed that he directly aided and abetted in the murder. Dominguez claims such a finding was error.

To support his position, Dominguez contends that the trial court could not base its determination on the portion of our opinion in *Dominguez I*, *supra*, D012153 wherein we state that Dominguez told the shooter, "Go ahead, shoot, shoot." Specifically, he argues that "it was hotly disputed at trial whether" Dominguez made this statement; this factual dispute was not necessarily decided adversely against Dominguez; Dominguez did not challenge the sufficiency of the evidence as to this finding in the original appeal; and, because malice must now be proved beyond a reasonable doubt, he is entitled to again challenge whether he actually made the disputed statement in a section 1170.95 hearing.

We agree the issue of whether Dominguez told the shooter to shoot was disputed at trial. The prosecution's theory of murder against Dominguez was that he encouraged the shooter to shoot the victim after reengaging the victim to finish their earlier altercation. In other words, the prosecution argued that Dominguez aided and abetted the murder by instructing his armed companion to shoot the victim. In contrast, at trial, Dominguez took the position that he never uttered the encouraging words. To this end, during closing argument, defense counsel challenged the credibility of the witnesses who claimed they heard Dominguez encourage the shooter and argued the prosecution had not proven that Dominguez actually said to shoot.

However, we disagree with Dominguez that this factual dispute "was not necessarily resolved adversely to [him] at trial." The jury convicted him

9

of second degree murder. It was provided with a general aiding and abetting instruction, and the prosecution argued that Dominguez aided and abetted the shooter by instructing him to shoot. The only reasonable conclusion is that the jury found, beyond a reasonable doubt, that Dominguez said, "Go ahead, shoot, shoot."

Further, the fact that Dominguez did not raise a substantial evidence challenge to this finding in his original appeal is of no moment. Dominguez's failure to raise this issue on appeal does not now give him the opportunity to require the prosecution to again prove that he made the challenged statement under the guise of a section 1170.95 evidentiary hearing. A jury already made that determination in finding him guilty, and Dominguez did not challenge that finding on appeal. Nonetheless, he now argues that section 1170.95 provides him with another bite at the proverbial apple in that he "is entitled to challenge the disputed evidence of his newly consequential statement." Not so. His statement, "Go ahead, shoot, shoot" did not gain new importance under Senate Bill 1437. When he was tried in 1990, that statement was the vital link between him and the shooting of the victim. Moreover, the change in law did not provide him with an argument for a retrial. In other words, under section 1170.95, the evidentiary hearing is not a forum for him to require the prosecution to again prove, beyond a reasonable doubt, that he made the encouraging statement to the shooter. The prosecution already did so, and Dominguez waived any challenge to that determination by failing to raise the issue in his original appeal. Now, per section 1170.95, he may only challenge the effect of that finding—whether he could be convicted of second degree murder based on that finding after changes to section 188 or 189 made effective January 1, 2019. (See § 1170.95, subdivision (a)(1)-(3); *Martinez*, *supra*, 31 Cal.App.5th at p. 723.) Thus, we

reject Dominguez's argument that the superior court erred in dismissing his petition without holding a hearing because he was entitled again to challenge the factual finding that he said, "Go ahead, shoot, shoot." He had no such right under section 1170.95.

We also are not persuaded by Dominguez's reliance on *People v. Offley* (2020) 48 Cal.App.5th 588 *(Offley)*. He claims that the instant matter is analogous to that case because, here, the trial court provided the jury with CALJIC No. 3.02[3] and the prosecutor, during closing argument, discussed the natural and probable consequences doctrine.[4]

In *Offley*, the petitioner, one of five defendants who took part in a gang-related shooting, was charged with murder, attempted murder and shooting into an occupied vehicle. (*Offley*, *supra*, 48 Cal.App.5th at p. 592.) Even though there was no separate conspiracy count, the People presented evidence of a conspiracy among the gang members; and the jury was

---

[3]     At the time of Dominguez's trial, CALJIC No. 3.02 provided: "One who aids and abets is not only guilty of the particular crime that to his or her knowledge his or her confederates are contemplating committing, but he or she is also liable for the natural and probable consequences of any criminal act that he or she knowingly and intentionally aided and abetted. You must determine whether the defendants are guilty of the crime originally contemplated, and, if so, whether the crime charged in Count 1 was a natural and probable consequence of such originally contemplated crime."

[4]     For example, during closing argument, the prosecutor said: "Why is that [the natural and probable consequences doctrine] significant here? Well, what we are talking about is a shooting. There is [*sic*] multiple gunshots. A person ends up being shot to death. Well, if someone helps someone in some form, according to the way the law describes it, to commit a shooting, even if they didn't intend that a death result as part of that shooting, a shooting followed by a death is a natural and probable consequence and you're just as responsible as if that had been on your mind the entire time."

11

instructed a member of a conspiracy is guilty not only of the particular crime he knows his confederates agreed to and committed, but also for the natural and probable consequences of any crime of a coconspirator to further the object of the conspiracy. (*Id*. at p. 593.) Offley was convicted of the three crimes charged, and the jury found true that he had personally used and intentionally discharged a firearm proximately causing death to the victim. (*Ibid*.)

The superior court summarily denied Offley's section 1170.95 petition without granting an evidentiary hearing, based on the jury's true finding of the firearm enhancement. (*Offley*, *supra*, 48 Cal.App.5th at p. 597.) The appellate court reversed. Offley had arguably been convicted of murder under the natural and probable consequences doctrine; he had not been charged with, and the jury was not instructed on, felony murder. In fact, shooting into an occupied vehicle—the only non-homicide-related charge against him—could not be the basis for a felony-murder conviction, even under the law prior to Senate Bill 1437. (See *People v. Chun* (2009) 45 Cal.4th 1172, 1200 [a killing during the course of an inherently dangerous assaultive felony, such as shooting into an occupied vehicle, is not felony murder].) Thus, the appellate court determined Offley could now be convicted of murder only upon proof he had acted with express or implied malice when shooting the victim; and, "[b]ecause an enhancement under section 12022.53, subdivision (d) does not require that the defendant acted either with the intent to kill or with conscious disregard to life, it does not establish that the defendant acted with malice aforethought." (*Offley*, at p. 598.) Elaborating on this point, the court explained, "The jury might have concluded that Offley intended to take part in a conspiracy to commit assault with a firearm, or to fire into an occupied vehicle, with the aim of either

12

injuring or merely frightening Barrales.  The jury could have then concluded that Barrales's death was the natural and probable consequence of the conspiracy and convicted [Offley] of murder without finding beyond a reasonable doubt that he acted with malice aforethought.  For this reason, we cannot say that Offley 'is ineligible for relief as a matter of law.' " (*Id*. at p. 599.)

We do not find *Offley* instructive here.  The issue in *Offley* was whether the trial court erred in concluding that defendant was ineligible for relief under section 1170.95 because the jury found true the section 12022.53, subdivision (d) allegation that the defendant personally and intentionally discharged a firearm, proximately causing great bodily injury and death to the victim.  (*Offley*, *supra*, 48 Cal.App.5th at pp. 592, 597-598.)  No such issue is presented here.

Further, we respectfully disagree with the appellate court's reasoning in *Offley*.  There, the court determined that the jury's true finding under section 12022.53, subdivision (d) did not establish that the jury found Offley acted with the requisite malice.  (*Offley*, *supra*, 48 Cal.App.5th at p. 598.)  However, we struggle to contemplate how any reasonable juror, under the facts presented, would not find that Offley acted with at least implied malice.  He was one of several gang members that shot into a car containing rival gang members.  If shooting multiple shots into an occupied car does not conclusively establish, at the very least, implied malice, we do not know what would.  (See *People v. Cravens* (2012) 53 Cal.4th 500, 507 [" 'Malice is implied when the killing is proximately caused by " 'an act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life' " ' "].)

Here, we reach a similar conclusion based on the record of conviction. Dominguez and the victim got into a verbal altercation while Dominguez was a passenger in a car, and the victim was standing on the street. A person got out of the car, which Dominguez was in and tried to shoot, but the gun would not fire. Dominguez told the would-be shooter to get back in the car. He also told the victim, he would deal with him another day. The car in which Dominguez was riding subsequently pulled over and Dominguez offered to finish the fight with the victim. Dominguez then told his armed companion, "Go ahead, shoot, shoot." Under these circumstances, it is clear that, by telling the shooter to shoot, Dominguez must have intended death or great bodily harm.[5] In any event, the natural and probable consequences of Dominguez telling the armed man to shoot is death or great bodily harm to the target. As such, Dominguez clearly exhibited malice. (See *People v. Cravens*, *supra*, 53 Cal.4th at p. 507.) Further, as explained in *People v. Roldan* (2020) 56 Cal.App.5th 997, review granted January 19, 2021, S266031, at pages 1004 through 1005, "the doctrine of implied malice has a 'natural and probable consequences' element," but Senate Bill 1437 "did nothing to remove implied malice as a basis for a second degree murder conviction." Here, as the superior court noted based on the record of conviction, including providing the jury with instructions defining principals and aiding and abetting (CALJIC Nos. 3.00 and 3.01), the jury convicted

---

[5]    There was no evidence offered at trial that Dominguez encouraged his armed companion to shoot near the victim to scare him. Moreover, Dominguez does not claim here that he could or would offer such evidence. Instead, he states that he is entitled to offer evidence at section 1170.95 hearing that he never said to shoot. As we discuss *ante*, he is not entitled to retry his murder conviction under section 1170.95.

14

Dominguez as a direct aider and abettor of murder.[6]  He is not entitled to relief as a matter of law under section 1170.95.  (See *Offley*, *supra*, 48 Cal.App.5th at p. 596 ["One who directly aids and abets another who commits murder is thus liable for murder under the new law just as he or she was liable under the old law"].)

DISPOSITION

The order is affirmed.

HUFFMAN, Acting P. J.

WE CONCUR:


AARON, J.


IRION, J.

---

[6]     We note that, in the reply brief, Dominguez argues *People v. Gentile* (2020) 10 Cal.5th 830 supports his contentions here.  In that case, our high court observed that the People had conceded, in the appellant's initial appeal, that the record did not permit the conclusion that the jury's first degree murder verdict was based on a valid ground.  In the second appeal, however, the appellate court made a factual finding that the appellant was convicted as a direct aider and abettor.  The California Supreme Court concluded that the appellate court's finding had "no preclusive effect if [the appellant] file[d] a petition for relief from his murder conviction under section 1170.95."  (*Id.* at p. 859.)  There are no analogous facts in the instant matter.  Accordingly, we determine *Gentile* is not instructive here.

Filed 10/18/21

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D077859 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. CR105918) |
| MARTY DOMINGUEZ, | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendant and Appellant. | |

THE COURT:

The opinion in this case filed September 23, 2021, was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the request pursuant to rule 8.1120(a) for publication is GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page one of said opinion be deleted and the opinion herein be published in the Official Reports.

HUFFMAN, Acting P. J.

Copies to:  All parties