Filed 8/18/21  P. v. Maurtua CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>VICTOR MANUEL MAURTUA III,<br><br>        Defendant and Appellant. | B301104<br><br>(Los Angeles County<br>Super. Ct. No. KA083187) |

APPEAL from an order of the Superior Court of Los Angeles County, Mike Camacho, Judge. Reversed and remanded with directions.

Jeralyn Keller, under appointment by the Court of Appeal, for Defendant and Appellant.

Matthew Rodriquez, Acting Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Amanda V. Lopez and Theresa A. Patterson, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury convicted defendant and appellant Victor Manual Maurtua, III of the first degree murder (Pen. Code, § 187, subd. (a))[1] of the victim, Hsu Hong, and found true the special circumstance that the murder was committed when he was engaged in, or was an accomplice to, a burglary (§ 190.2, subd. (a)(17)). After the enactment of Senate Bill No. 1437 (Senate Bill 1437), Maurtua filed a petition for vacatur of the murder conviction and resentencing pursuant to section 1170.95. The court found Maurtua made a prima facie showing of eligibility, but denied the petition because Maurtua's conduct established that he was a major participant in the burglary and acted with reckless indifference to human life, and was therefore not entitled to relief.

Maurtua contends that the court based its decision on its mistaken beliefs that (1) this court upheld the jury's special

_____

[1] All further statutory references are to the Penal Code unless otherwise indicated.

2

circumstance finding under *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) in a prior opinion,[2] and (2) the record of conviction established that Maurtua covered his face during the robbery. He further contends that the court made credibility assessments, which is not permitted prior to issuance of an order to show cause and an evidentiary hearing. Maurtua asserts that he made a prima facie showing that he is entitled to relief under section 1170.95, subdivision (c), and urges us to remand the matter to the court to issue an order to show cause and conduct an evidentiary hearing in which the burden is on the prosecution to establish that he is not entitled to relief beyond a reasonable doubt.

The People respond that the special circumstance finding affirmed by this court prior to *Banks* and *Clark*, *supra*, 63 Cal.4th 522, required the jury to find that Maurtua was a major participant in the burglary who acted with reckless indifference to human life, and precludes Maurtua from eligibility. The People acknowledge that there is disagreement amongst the courts of appeal on the issue of whether a jury's special circumstance finding made before *Banks* and *Clark* (which clarified the meaning of "reckless indifference to human life") bars relief, but urge us to reconsider our oft-stated position that it does not. (See *People v. York* (2020) 54 Cal.App.5th 250, 257–263 (*York*), abrogated on another ground in *People v. Lewis* (July

_____

[2] In *Banks*, our Supreme Court "examined the issue of 'under what circumstances an accomplice who lacks the intent to kill may qualify as a major participant so as to be statutorily eligible for the death penalty.' [Citation.]" (*People v. Clark* (2016) 63 Cal.4th 522, 611 (*Clark*).)

26, 2021, No. S260598) __Cal.5th __ [2021 WL 3137434] (*Lewis*); *People v. Torres* (2020) 46 Cal.App.5th 1168, 1180 (*Torres*), abrogated on another ground in *Lewis, supra,* __Cal.5th __ [2021 WL 3137434]; *People v. Smith* (2020) 49 Cal.App.5th 85, 93–94 (*Smith*), abrogated on another ground in *Lewis, supra,* __Cal.5th __ [2021 WL 3137434].)  Alternatively, the People argue the court was entitled to analyze the purely legal question of whether Maurtua's conviction satisfies *Banks* and *Clark*, and deny the petition as a matter of law.

We reverse and remand to the trial court to issue an order to show cause and conduct a hearing pursuant to section 1170.95, subdivision (c).

## FACTS AND PROCEDURAL HISTORY

*Facts*

On March 19, 2008, Megali Fernandez and Christine Alegre decided to skip high school.  They called Maurtua's sister to ask her to join them.  She was asleep, but Maurtua said that he and Christopher Santana would drive over and pick up the girls.

Maurtua knew that Santana associated with an El Monte criminal street gang and was known by the gang moniker "Vicious."[3]  About a month prior to the murder, Santana told Maurtua, Alegre, Fernandez, and others that he had burgled

---

[3] Maurtua confessed to the police in a recorded interview that was later played for the jury.

houses before, and that it was simple.  He told them about a particular house.  Santana said he knew the girl who lived there, and that the house was "loaded".  The girl had a "buff" brother.  Santana said that if the girl and her brother happened to be home when he burgled the house "[h]e would just kill them".  Unbeknownst to Santana at the time, the girl he knew no longer lived at the house; rather, the house was occupied by Hsu Hong, who ultimately was the victim.

Santana and Maurtua picked up the girls, and then drove to get Santana's friend, Christopher Stratis.  The group went to Stratis's foster mother's house, which Santana and Stratis planned to burgle.  Santana, Maurtua, and Stratis got out of Santana's van and went to the house, but left when they realized someone was home.

The group continued driving until they passed the house where Santana mistakenly thought the girl he knew lived (Hong's house).  Santana stopped the van, and he, Stratis, and Maurtua jumped over the fence into Hong's backyard.  All three men put on latex gloves.  Santana covered his face with a black bandana, Maurtua covered his face with a white bandana, and Stratis covered his head with the hood of his sweatshirt.  Santana pulled out a gun.  Neither Stratis nor Maurtua said anything to Santana about the gun.  Maurtua later confessed to police that when he saw the gun, he thought ". . . really gonna do this; like, wow."

Santana ran inside Hong's garage and opened the door to the house, which was unlocked.  Maurtua and Stratis followed him into the garage.  Maurtua or Stratis opened the door to the house, and Maurtua saw a lady on the phone calling the police.  Maurtua told Stratis, "[L]et's go; she's already calling the cops."

As he and Stratis were running away, Maurtua heard four or five gunshots. Santana caught up to the other two men, and ran next to Maurtua. Maurtua saw Santana zip up the backpack that had held the gun, and toss it away. The men stopped and Santana told Maurtua to call Alegre. Maurtua did, and Alegre came and picked them up in Santana's van. After they were inside the van, Maurtua asked Santana what happened, and he responded, "I shot her."

Hong died of her injuries.

## *Trial*

Maurtua, Stratis, and Alegre were charged with murder and tried together before three separate juries. Maurtua and Stratis were convicted of murder in the commission of a burglary and sentenced to life without parole. Alegre was acquitted.

## *Appeal*

On direct appeal from their judgments of conviction, Stratis and Maurtua contended there was insufficient evidence to support the jury's burglary-murder special circumstance findings. The appeal was decided before the Supreme Court's decisions in *Banks* and *Clark*, which "'construed the meanings of "major participant" and "reckless indifference to human life" "in a significantly different, and narrower manner than courts had previously." (*Torres*, *supra*, 46 Cal.App.5th at p. 1179.)' (*Smith*, *supra*, 49 Cal.App.5th at p. 93 [].)" (*York*, *supra*, 54 Cal.App.5th at p. 258.) This court reversed Stratis's sentence of life without parole and remanded the matter for resentencing with adherence

to the guidelines set forth in *Miller v. Alabama* (2012) 567 U.S. 460.  We additionally ordered the trial court to recalculate Stratis's presentence credit award, and modified the judgment against Maurtua to omit a parole revocation fine.  In all other respects, we affirmed the judgments.  (*People v. Stratis* (Oct. 21, 2013, B229255) [nonpub. opn.] (*Stratis I*).)

With respect to the sufficiency of the evidence supporting the jury's burglary murder special circumstance finding against Maurtua, we stated:  "The evidence demonstrated Stratis and Maurtua knew what they were getting into when they arrived at the Hong home with Santana.  Both men agreed to commit a home invasion robbery with Santana—a person whose moniker was 'Vicious.'  Stratis described Santana as 'crazy.'  Maurtua knew he was associated with a criminal street gang, was armed with a handgun, and intended to 'just kill' the girl who lived in the home as well as her brother if they were present during the robbery.  The men operated together and attempted to avoid identification—Maurtua put on a white bandana, Stratis pulled the hood up on his sweatshirt, and all three men wore latex gloves.  Stratis and Maurtua jumped a fence with Santana and the three men entered Hong's garage together.  After gunshots rang out, Stratis and Maurtua fled with Santana and left Hong to die.  [¶]  There was substantial evidence from which a rational trier of fact could conclude Stratis and Maurtua were major participants in the crime who acted with reckless indifference to human life.  [Citations.]"  (*Stratis I*, *supra*, B229255, at *3.)

The Supreme Court initially granted the petitions for review filed by the Attorney General and Stratis.  Thereafter, it transferred review back to this court for reconsideration of the burglary murder special circumstance against Stratis in light of

7

*Banks*, *supra*, 61 Cal.4th 788.  (*People v. Stratis* (May 5, 2016, B229255) [nonpub. opn.] (*Stratis II)*.)  We held that Stratis's conduct qualified him for special circumstance punishment and remanded the matter to the trial court for resentencing as to Stratis.  (*Stratis II*, *supra*, at *1.)

### *Section 1170.95 Petition*

On January 1, 2019, section 1170.95 was enacted as part of Senate Bill 1437, which "amend[ed] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life."  (Stats. 2018, ch. 1015, § 1, subd. (f).)  Section 1170.95 permits a defendant convicted of first or second degree murder under the felony murder rule or natural and probable consequences doctrine to petition for vacatur of the murder conviction and resentencing.  (*People v. Martinez* (2019) 31 Cal.App.5th 719, 723.)

On February 7, 2019, Maurtua filed a petition for relief under section 1170.95.  The court appointed counsel to represent him.  On June 12, 2019, the People filed an opposition to the petition, arguing, as relevant here, that the jury's pre-*Banks* and *Clark* special circumstance finding precluded relief as a matter of law.  Maurtua replied to the People's opposition on July 19, 2019.  He contended that section 1170.95 applied to his case retroactively, and that he was eligible for resentencing because he did not act with reckless indifference to human life in commission of the burglary.

8

On July 29, 2019, the court held a hearing on Maurtua's and Stratis's section 1170.95 petitions, addressing each in turn. The court tentatively ruled that it found this court's prior opinion highly persuasive, and noted that "both defendants did, in fact, receive, essentially, *Bank*[s][4] scrutiny during the appellate review as to whether or not their special circumstance felony murder convictions should be upheld."

The court then quoted from our opinion: "'[b]oth Stratis and Maurtua knew what they were getting into when they arrived at the Hong home with, again, the actual killer, which was Mr. Santana. Both men, being Stratis and Maurtua, agreed to commit a home-invasion robbery with Santana. Bear in mind, as we all know, Mr. Santana was the triggerman. He is the one that actually committed the murder. But, again, both men, Stratis and Maurtua, agreed to commit a home-invasion robbery with Santana, a person whose moniker was known to them as, quote/unquote "vicious." Stratis describes Santana as "crazy." Maurtua knew he was associated with a criminal street gang, was armed with a handgun, and intended to, quote/unquote, "just kill the girl who lived in the home as well as her brother if they were present during the robbery," albeit that both individuals that Mr. Santana referenced and Mr. Maurtua referenced were not the actual victim. But, nonetheless, the men operated together and attempted to avoid identification. Maurtua put on a white bandana. Stratis pulled the hood up on his sweatshirt, and all three men wore latex gloves before they entered the Hong home. Stratis and Maurtua jumped the fence with Santana, and the three men entered Hong's garage together. Granted, both

---

[4] *Banks, supra,* 61 Cal.4th 788.

9

Stratis and Maurtua remained in the garage.' And the court certainly acknowledges that. I presided over the trial. 'It was Santana who entered the interior of the home and encountered victim Hong; and, obviously, it was Santana who removed his gun from his backpack, which they had prepared before they even went to the location, and shot Miss Hong inside the home. After those gunshots rang out, Stratis and Maurtua fled with Santana, and they left Miss Hong in the home where she ultimately expired.'

"The appellate court found that there was substantial evidence from which a rational trier of fact could conclude that Stratis and Maurtua were major participants who acted with reckless indifference to human life."

The court continued, "Now, most of [this] court's comments with respect to the factual analysis were extracted from the opinion during the appellate process in this case. That, I think, is a compelling argument. I think it's one which this court is inclined to adopt." The court then invited the parties to argue their positions.

Maurtua's counsel argued that the court was improperly considering facts that were not presented to Maurtua's jury, which must have been derived from the evidence against Stratis or Alegre. He asserted that Maurtua was culpable for burglary, not murder. Maurtua voluntarily presented himself at the police station to speak with officers, confessed, and gave a video statement about the events. Maurtua did not intend to burgle a home with people present, and wasn't aware that Santana had a gun until they were over the fence. Maurtua was a Christian and did not believe in killing another human being. He made an attempt to withdraw himself from the crime when he learned

10

someone was in the house.  Maurtua stated that he didn't believe Santana had really shot the victim.  In light of these facts, the court should not find that Maurtua displayed reckless disregard for the consequences of his actions.

Maurtua's counsel reiterated, "I don't know where the appellate court gets [the] facts [the court recounted], possibly Mr. Stratis said that, but that was not in any information that was introduced against my client in his conviction.  I think the court is bound by the facts that were presented in my client's case and not by anything that was presented in Mr. Stratis's case.  I think the appellate court may have gotten confused between the two trials."  Counsel asserted that there was no evidence that the brother of the girl they believed to live in the house was buff and that Santana intended to kill him.  *Banks*, *supra*, 61 Cal.4th 788, stands for the position that when a defendant participates as an accomplice in a burglary and nothing more he should not be punished for murder.  The defendant has to know the principal is going to commit murder or have reckless disregard for whether the principal commits the acts.  Counsel asserted that Maurtua's case was precisely the type of case that the Legislature had in mind when it enacted section 1170.95.

The prosecutor responded that, looking at the *Banks* factors, Maurtua was guilty of murder.  Maurtua was involved in the planning of the robbery and could have changed his mind after the plan to rob Stratis's foster mother was aborted, but did not.  He was aware that Santana had a firearm, but did not leave, and instead entered Hong's garage.  Maurtua did not seek aid for Hong when he learned she had been shot.  The jury was presented with this evidence and found that Maurtua was a major participant who acted with reckless disregard for human

life.  Maurtua did not go to the police station the next day and make a statement to police "out of the goodness of his heart".  Maurtua went to the station several days after the murder after the police "zeroed in on him and [he] became one of the suspects".  The men attempted to burgle Stratis's foster mother's house first.  Maurtua saw the gun after they scaled the fence at Hong's house.  After seeing the gun, he went up a dirt embankment to a paved area and into the garage.  He had plenty of time to change his mind but did not.  If he had regard for human life he could have attempted to stop Santana or tried to leave.  Maurtua instead followed Santana.

The court responded that what struck it as compelling was the fact that Maurtua covered his face.  If he knew the house was unoccupied, there would be no reason to conceal himself.  The court stated, "They very well knew that that place could have been occupied.  And as a matter of fact, they knew some of the occupants who lived there and that was discussed before actual entry into the structure took place.  They were prepared to handle it in the event someone was indeed home. . . . [¶] Mr. Maurtua along with Mr. Stratis knew that Mr. Santana was associated with the El Monte Flores criminal street gang.  He even acquired the moniker of Vicious.  He had a reputation for violence, and they knew that. . . . And Mr. Maurtua was not like the females who were also among these conspirators who were the getaway drivers and waiting in the vehicle, acting as lookouts.  That culpability in terms of felony murder is lessened to the point that, you know, in recent case[s], including the *Chiu*[5]

---

[5] *People v. Chiu* (2014) 59 Cal.4th 155, superceded by Senate Bill No. 1437 on other issues as stated in *People v. Lopez* (2019) 38 Cal.App.5th 1087, 1103.

case where the Supreme Court acknowledges that people who commit felony murder are sometimes less culpable and should not be punished as harshly as first degree murder[er]s unless, of course, there is something more, and that is, an awareness of the grave risk of death that's likely to occur in the event they continue to participate in the underlying felonies. That's really the rule that the court has to focus on in order to categorize an accomplice as a major participant acting with reckless indifference to human life. I think Mr. Maurtua has satisfied that threshold based on his conduct. . . ."

"[M]y ruling -- and, quite frankly, I'm going to be hard pressed to sway from it -- is to make a finding that, although Mr. Maurtua is entitled to be considered for resentencing under 1170.95, that his conduct in the underlying case does satisfy what the law has always required for purposes of special circumstance first degree felony murder in that he was, in fact, a major participant and acted with reckless indifference to human life."

The court emphasized that the issue was simply "whether or not the conduct satisfies what the law mandates. Even under the changes with SB1437. This was not a case where Mr. Maurtua was simply the getaway driver, just remained in the vehicle waiting for the actual perpetrators to commit the felony and suddenly an unexpected murder occurs during the perpetration of that felony. This is not one of those cases where I agree with you 1170.95 is designed to address. Mr. Maurtua's participation was much more substantial than that. And for the reasons I've mentioned . . . I think his conduct does satisfy what the law mandates even with the changes, and so the conviction will stand."

Maurtua timely appealed.

13

## DISCUSSION

### *Section 1170.95*

"Senate Bill No. 1437, which went into effect on January 1, 2019, amended section 189 to limit the scope of liability for murder on a felony-murder theory. [Citation.] With respect to felony murder and as applicable to [Maurtua], section 189, subdivision (a) states 'All murder . . . that is committed in the perpetration of, or attempt to perpetrate, . . . robbery, [or] burglary . . . is murder of the first degree.' However, section 189, subdivision (e)—the new provision added by Senate Bill No. 1437—limits liability for felony murder to persons for whom 'one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2.' [Citation.]" (*People v. Drayton* (2020) 47 Cal.App.5th 965, 972–973 (*Drayton*), abrogated on another ground in *Lewis*, *supra*, __ Cal.5th __ [2021 WL 3137434].)

If, as Maurtua did here, a petitioner files a section 1170.95 petition that contains all of the statutorily required information and requests counsel, the court must appoint counsel and order briefing. (*Lewis*, *supra*, __ Cal.5th at p. __ [2021 WL 3137434 at *3–*10].) The court then evaluates whether the petitioner has made a prima facie showing that he or she is eligible for relief.

14

(*Id.* at \*3.) To do so, the trial court may review the record of conviction, however, "the prima facie inquiry under subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, '"the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause."' (*Drayton, supra*, 47 Cal.App.5th at p. 978, quoting Cal. Rules of Court, rule 4.551(c)(1)).) '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' (*Ibid.*, fn. omitted, citing *In re Serrano* (1995) 10 Cal.4th 447, 456 (*Serrano*).) 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner."' (*Drayton*, at p. 979, quoting *Serrano*, at p. 456.)" (*Id.* at \*10.)

### *Analysis*

Maurtua contends the trial court's ruling was based on a false recollection that the evidence showed Maurtua was masked, when he was not, and also on the trial court's erroneous belief that the appellate court had affirmed the special circumstance in his case post-*Banks*. He further contends that the trial court made credibility assessments and drew inferences in a subdivision (c) eligibility hearing, which it is not permitted to do.[6]

---

[6] Section 1170.95, subdivision (c), does not specifically provide for an eligibility hearing. We presume that, while not

Maurtua's first two contentions are belied by the record. Maurtua confessed that he covered his face with a white bandana. An audio recording of the confession was played for Maurtua's jury at trial.

Further, the trial court did not rely on this court's post-*Banks* affirmance of the jury's special circumstance finding in *Stratis II*, which considered the special circumstance in co-defendant Stratis's case only. In its ruling on Maurtua's petition, the trial court quoted from *Stratis I*. In that appeal, both defendants contended there was insufficient evidence to support the burglary-murder special circumstance findings against them. The trial court's quote from the opinion is not word-for-word, and was punctuated by its own observations, but it is clear from the language of the ruling that the trial court was quoting *Stratis I*, which involved Maurtua, and not the subsequent decision in *Stratis II*, the post-*Banks* appeal involving only Stratis.

However, we conclude that the court's ruling was in error, because it employed an incorrect analysis under section 1170.95, subdivision (c). "[The] authority to make determinations without conducting an evidentiary hearing pursuant to section 1170.95, subd. (d) is limited to readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion (such as determining whether the petitioner showed reckless

---

required, the court may hold such a hearing pursuant to Code of Civil Procedure, section 187, which authorizes the trial court to "'create new forms of procedures' in the gaps left unaddressed by statutes and the rules of court. [Citations.]" (*People v. Lujan* (2012) 211 Cal.App.4th 1499, 1507.)

16

indifference to human life in the commission of the crime).” (*Drayton*, *supra*, 47 Cal.App.5th at p. 980.)

Here, it appears that the trial court evaluated the facts underlying Maurtua’s conviction to determine that he was a major participant in the burglary and acted with reckless indifference to human life. Such an inquiry requires fact-finding and the weighing of evidence, which cannot take place until an order to show cause issues and a hearing is held. (*People v. DeHuff* (2021) 63 Cal.App.5th 428, 439–442 (*DeHuff*), abrogated on another ground in *Lewis*, *supra*, __Cal.5th __ [2021 WL 3137434]; see also *Drayton*, *supra*, 47 Cal.App.5th at pp. 978–979.)

We are not persuaded otherwise by the People’s argument that the jury’s special circumstance finding made before *Banks* and *Clark* were decided precludes eligibility. We have explained that “[i]n their wording, the requirements for a special circumstance finding are . . . identical to the requirements for felony murder, as it is currently defined. However, in [*Banks* and *Clark*], our Supreme Court ‘construed the meanings of “major participant” and “reckless indifference to human life” “in a significantly different, and narrower manner than courts had previously.” (*Torres*, *supra*, 46 Cal.App.5th at p. 1179.)’ (*Smith*, *supra*, 49 Cal.App.5th at p. 93.) Where a special circumstance finding was made before *Banks* and *Clark*, the terms ‘major participant’ and ‘reckless indifference’ underlying that finding have significantly different meanings than these terms have for purposes of convicting a defendant of murder pursuant to section 189, subdivision (e)(3), as amended by Senate Bill 1437. As a consequence, a pre-*Banks* and *Clark* special circumstance finding cannot preclude eligibility for relief under . . . section 1170.95[,

17

subdivision (c),] . . . because the factual issues that the jury was asked to resolve in a trial that occurred before *Banks* and *Clark* were decided are not the same factual issues our Supreme Court has since identified as controlling." (*York*, *supra*, at p. 258, fn. omitted.)  The People offer no persuasive reason for us to abandon our prior holdings.

Even if, as the People suggest, the trial court conducted a legal analysis and determined the evidence was sufficient to support the jury's pre-*Banks* and *Clark* special circumstances finding under the current articulation of the terms "major participant" and "reckless indifference to human life," its denial of Maurtua's petition is erroneous.  Section 1170.95 does not contemplate evaluation of special circumstance findings; it concerns murder convictions.  (See *York*, *supra*, 54 Cal.App.5th at p. 260; *People v. Harris* (2021) 60 Cal.App.5th 939, 956–957, abrogated on another ground in *Lewis*, *supra*, __ Cal.5th __ [2021 WL 3137434], review granted Apr. 28, 2021, S267802.)  As our Supreme Court recently emphasized, "the prima facie inquiry under subdivision (c) is limited. . . .  '"[T]he court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved.  If so, the court must issue an order to show cause."'  (*Drayton*, *supra*, 47 Cal.App.5th at p. 978, quoting Cal. Rules of Court, rule 4.551(c)(1)).)"  (*Lewis*, *supra*, __ Cal.5th at p. __ [2021 WL 3137434, at *10].)  Nothing in the language of section 1170.95 indicates that the Legislature intended that a legal analysis of the sufficiency of a special circumstance be conducted as part of this preliminary assessment, and although the Supreme Court has not addressed this issue, its recent precedent suggests that

18

the inquiry consists of a straightforward consultation of the record of conviction that does not include ancillary legal analysis.

Here, it cannot be determined from the record of conviction that Maurtua is ineligible for relief without evaluating the facts; he has therefore made a prima facie showing of entitlement. The court must issue an order to show cause and hold a hearing, at which it may evaluate new and/or additional evidence offered by the parties as well as record facts. (§ 1170.95, subds. (c) & (d).)

## DISPOSITION

We reverse the court's order denying Maurtua's section 1170.95 petition and remand for the court to issue an order to show cause and hold a hearing in conformance with this opinion.


MOOR, J.

I concur:


Rubin, P.J.


Baker, J.


19

The People v. Victor Manuel Maurtua III

B301104


BAKER, J., Concurring


      I join the majority opinion with the exception of the penultimate paragraph of the "discussion" section.  It is enough to conclude reversal is required in this case because the court did not issue an order to show cause and believed it was prohibited from considering new evidence.


                                    BAKER, J.